UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHELLE PETREY, *on behalf of herself and others similarly situated*,

                                  **Plaintiff,**

   vs.                                                   3:20-CV-1147
                                                                    (MAD/ML)

VISIONS FEDERAL CREDIT UNION,

                                  **Defendant.**

---

**APPEARANCES:**                                  **OF COUNSEL:**

**KALIEL GOLD PLLC**                 **JEFFREY D. KALIEL, ESQ.**
1100 15th Street NW – 4th Floor    **SOPHIA GOREN GOLD, ESQ.**
Washington, DC 20005
Attorneys for Plaintiff

**WILENTZ GOLDMAN & SPITZER PA**    **KEVIN P. RODDY, ESQ.**
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Attorneys for Plaintiff

**THE KICK LAW FIRM**               **TARAS KICK, ESQ.**
815 Moraga Drive                      **JEFFREY BILS, ESQ.**
Los Angeles, California 90049
Attorneys for Plaintiff

**LITCHFIELD, CAVO LAW FIRM –**    **BRIAN GITNIK, ESQ.**
**NEW YORK OFFICE**
420 Lexington Avenue, Suite 2104
New York, New York 10170
Attorneys for Defendant

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

1

Plaintiff, an account holder with Defendant, commenced this putative class action alleging various violations of state law. *See* Dkt. No. 1. The complaint alleges the following causes of action: breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. *See id.* at ¶¶ 11-14. On January 11, 2021, Defendant filed a motion to dismiss the complaint in its entirety. *See* Dkt. No. 37. Plaintiff opposes the motion. *See* Dkt. No. 38. For the following reasons, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff's claims stem from Defendant's policy regarding the assessment of insufficient funds fees ("NSF fees"). *See* Dkt. No. 1. The parties' relationship is governed by the "Share Accounts, Checking Account and Electronic Fund Transfer Agreements and Disclosure Statements" (the "Agreement). *See id.* at ¶¶ 19-20; Dkt. No. 37-3. With respect to NSF fees on automated clearing house ("ACH") payments, the Agreement provides the following:

> If ... a debit item is presented without sufficient funds in your checking account to pay it, we may, at our discretion, pay the item (creating overdraft) or return the item for insufficient funds (NSF). The fee amounts for the payment of an overdraft or returning the item are indicated in the separate Service Charge Schedule.

Dkt. No. 37-3 at 5.[1]

Plaintiff claims that the Agreement allows Defendant to charge a single $25 NSF fee when an item is returned for insufficient funds but that Defendant breached that agreement by charging more than one NSF fee on the same item. *See* Dkt. No. 1 at ¶¶ 9-10. For example, on October 6, 2014, Plaintiff attempted to make an ACH payment. *See id.* at ¶ 14. Defendant rejected the payment due to insufficient funds and charged Plaintiff a $25 NSF fee. *See id.* at ¶ 15. Plaintiff

---

[1] Although the Agreement was not attached to the complaint, it was incorporated by reference. *See* Dkt. No. 1. Therefore, the Court may consider the Agreement in reaching its decision on the present motion. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

does not dispute that the initial NSF fee is permitted by the Agreement. *See id.* However, on October 10, 2014, the ACH item was processed again and Plaintiff was assessed another $25 NSF fee. *See id.* at ¶ 16. Plaintiff claims that she was charged multiple NSF fees on a single item on multiple occasions. *See id.* at ¶ 18.

### III. DISCUSSION

A.   **Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico*, 471 F.3d at 398 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

3

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.     Breach of Contract**

"To state a claim for breach of contract under New York law, 'the complaint must allege: [(1)] the formation of a contract between the parties; [(2)] performance by the plaintiff; [(3)] failure of defendant to perform; and [(4)] damages.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotation omitted). "Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide'" and where the contract is unambiguous, a court is "'required to give effect to the contract as written.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citations omitted). "In reviewing a motion to dismiss for a breach of contract claim pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] the Court may interpret a contract properly before it and should 'strive to resolve any contractual ambiguities in the non-moving party's favor.'" *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13-CV-7169, 2014 WL 3639176, *3 (S.D.N.Y. July 22, 2014) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "However, the court is 'not constrained to accept the allegations of the pleading in respect to the construction of the contract.'" *Id.*

4

"When the meaning of a contract is litigated, a reviewing court ordinarily looks only at the words used by the drafter, who presumably understood what they intended." *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 426 (2d Cir. 1992).  It is well-accepted that courts should construe contracts according to the parties' intent as derived from the contracts' unambiguous terms.  The parties' intent is derived "from the plain meaning of the language employed in the agreements," *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (quotation and citation omitted), when the agreements are "read as a whole." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).  Divining the parties' intent requires a court to "give full meaning and effect to all of [the contract's] provisions." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (quotation and citation omitted).  Courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (citations omitted).  When the parties' intent is clear – *i.e.*, unambiguous – the contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005)).  A contract is unambiguous where the contract's terms have "a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)).

If reasonable minds could differ about the meaning of contractual language, however, such language is ambiguous.  *Id.* (describing contractual language as ambiguous when it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement").  The Court must then turn to extrinsic evidence to determine the parties' intent.  *See State v. Home Indem. Co.*, 66 N.Y.2d 669,

671 (1985) (per curium). While extrinsic evidence generally may not vary or contradict the terms of a fully integrated document, it may be used to interpret facially ambiguous language in the contract. *See Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008).

The Agreement here provides the following:

> If ... a debit item is presented without sufficient funds in your checking account to pay it, we may, at our discretion, pay the item (creating overdraft) or return the item for insufficient funds (NSF). The fee amounts for the payment of an overdraft or returning the item are indicated in the separate Service Charge Schedule.

Dkt. No. 37-3 at 5. The Agreement does not define "debit item" or "item."[2] *See id.* Plaintiff argues that the phrase "item" refers to both the original submission of an ACH transaction as well as any subsequent resubmissions, thereby allowing only one NSF fee per ACH transaction regardless of how many times the item is resubmitted. *See* Dkt. No. 38 at 9-11. Defendant argues that the Agreement expressly authorizes it to assess multiple NSF fees if an ACH transaction is submitted for payment by the merchant multiple times. *See* Dkt. No. 37-2 at 8-9. Specifically, Defendant argues that the Agreement allows it to assess an NSF fee each time "an item is presented." *See id.* at 8. Agreements and NSF fee practices such as those at issue here have been litigated throughout the country and each case turns on the language in the controlling account agreements. However, courts in this Circuit have found agreements which are more clear than the agreement here to be ambiguous.

---

[2] Both parties discuss at length the rules of the National Automated Clearing House Association ("NACHA"). *See* Dkt. No. 37-2 at 4-6; Dkt. No. 38 at 11-13. Plaintiff uses the NACHA rules to argue that her interpretation of the Agreement is reasonable in light of terms used. *See* Dkt. No. 38 at 11-13. Defendant describes at length how it is the merchant, not Defendant, that re-submits ACH items for payments, and that Defendant is required to honor and process all requests its receives from merchants. *See* Dkt. No. 37-2 at 5. As neither party has provided the Court with the NACHA rules, nor are the rules necessary to determine whether the contract here is ambiguous, the Court does not address the NACHA rules. Additionally, Defendant's argument

6

For example, in *Roy v. ESL Federal Credit Union*, No. 19-CV-6122, 2020 WL 5849297, *8 (W.D.N.Y. Sept. 30, 2020), the court examined an agreement which provided the following with respect to NSF fees:

> An Overdraft/Insufficient Funds fee will be charged to your share draft account, in accordance with our Fee Schedule, for each overdraft Item that is cleared on your share draft account. In addition, an Overdraft/Insufficient Funds fee will be charged by ESL for each "insufficient funds" item presented for payment and returned unpaid on a share draft account.

There, the court noted that the term "item" was not defined. *See id.* Ultimately, the court found that the agreement was ambiguous. Similarly, in *Chambers v. HSBC Bank USA*, No. 19 Civ. 10436, 2020 WL 7261155, *3 (S.D.N.Y. Dec. 10, 2020) (emphasis added), the court found ambiguous an agreement which stated that "NSF fees may be charged 'for *each* withdrawal, check, electronic funds transfer or other item that overdraws your account." In *McNeil v. Capital One Bank*, No. 19-CV-473, 2020 WL 5802363, *2 (E.D.N.Y. Sept. 29, 2020) (emphasis added), the account agreement permitted the bank to "charge a fee for *each item*, returned in accordance with its fee schedule." The presence of the term "each" and/or a definition of the word "item" are often determinative in cases within this Circuit. *See Richard v. Glens Falls National Bank*, No. 20-CV-734, 2021 WL 8100218, *10-11 (N.D.N.Y. Mar. 3, 2021) (finding agreement ambiguous where it allowed the bank to assess fees "for each check or other debits or similar transactions presented against insufficient funds" but the term "item" was undefined).

In *Perks v. TD Bank*, 444 F. Supp. 3d 635, 638 (S.D.N.Y. 2020), the account agreement permitted TD Bank to charge an NSF fee "per item" when a transaction was charged against insufficient funds. The account agreement defined an "item" as including an "ACH transaction ...

---

would not vindicate it because, as Defendant itself admits, NACHA does not govern how Defendant may assess NSF fees.

and any other instruction or order for the payment, transfer, deposit or withdrawal of funds." *Id.* at 638-39 (emphasis omitted). There, the court found that the term "item" was ambiguous because it did not clarify whether resubmission of an ACH transaction was a "separate item or [was] part of the same initial ACH transaction." *Id.* at 640. Construing the ambiguity in the plaintiffs' favor, the court denied the defendant's motion to dismiss. *See id.*

However, the agreements in *Roy*, *Chambers*, *Perks*, and *McNeil* are much stronger than the Agreement here because those agreements specifically provided that a fee may be assessed for "*each* overdraft Item", "*each* 'insufficient funds' item", or "*each* withdrawal, check, electronic funds transfer or other item." *See Roy*, 2020 WL 5849297, at *8; *Chambers*, 2020 WL 7261155, at *3. Here, the Agreement provides no such language nor is the term "item" defined.

Defendant relies on four out-of-circuit cases in support of its argument. *See* Dkt. No. 37-2 at 9-10. Three of those cases are easily distinguishable from the instant case for numerous reasons. First, the agreements in those cases included the term "each" in their NSF fee provisions. *See Lambert v. v. Navy Federal Credit Union*, No. 19-CV-103, 2019 WL 3843064, *4 (E.D. Va. Aug. 14, 2019) (noting that the agreement provided that a "fee may be assessed ... for each returned debit item"); *Saunders v. Y-12 Federal Credit Union*, No. E2020-46-COA-R3-CV, 2020 WL 6499558, *5 (Tenn. Ct. App. Nov. 5, 2020) (noting that the agreement provided that accountholders "may be subject to a charge for each overdraft"); *Winamaki v. Umpqua Bank*, No. 19-CV-52252 (Or. Cir. Oct. 30, 2020)[3] (noting that the controlling agreement stated that the bank "will charge you a fee of $35 each time we pay or return a transaction that overdraws your checking account"). Additionally, in *Lambert*, the parties agreed that "'item' is a request or invitation for payment." *Lambert*, 2019 WL 3843064, at *4. The court found that the agreed-

---

[3] Defendant has provided this case as an exhibit to its motion. *See* Dkt. No. 37-5.

upon definition included the requests for payment made by the merchants. *See id.* at *4-5. Here, there is no agreement or definition as to the term "item."

Although the final decision upon which Defendant relies does not address important determinative issues, such as ambiguity of the term "item," it is also distinguishable. *See Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690, *4 (N.D. Ill. Aug. 26, 2020); *Richard*, 2021 WL 810218, at *14 (distinguishing *Page*). The court in *Page* found that the "language in these provisions does not promise members that Alliant will charge just one overdraft fee per transaction." *See id.* As the Court describes below, such a finding arguably allows Defendant to benefit from ambiguity in its own contract, which is contrary to well-established contract law. Finally, *Page*, an out-of-circuit case, is against the great weight of the in-circuit authority that the Court has already discussed.

The *Chambers* court summed up the problem with Defendant's argument well when it said the following: "Defendant's argument that the Disclosures are unambiguous because they authorize an NSF fee for 'each ... item' that overdraws an account is unpersuasive, because the ambiguity here pertains to what qualifies as an 'item' to begin with, not whether NSF fees may be incurred for 'each' of them." *Chambers*, 2020 WL 7261155, at *4. First, the Court notes that the Agreement here does not define the terms "debit item" or "item," include the term "each," or state that Defendant may impose multiple NSF fees on a single transaction.[4] *See* Dkt. No. 37-3.

---

[4] Interestingly, Defendant seems to believe that it should get the benefit of this ambiguity. *See* Dkt. No. 37-2 at 11 (arguing that "the Agreement does not say that an NSF may be charged only the first time a merchant initiates a transaction for a check or other payment order. And, Plaintiff fails to point to any language in the Agreement precluding Visions from assessing an NSF fee merely because it was assessed the first time the merchant initiated a transaction to get paid and payment was rejected"); Dkt. No. 39 at 4 ("Nowhere in the Fee Schedule does it state that only one NSF fee will be charged per transaction"). However, it is well-established that contractual ambiguities must be construed against the drafter. *See Kerin v. U.S.P.S*, 116 F.3d 988, 992 (2d

Second, the Defendant's attempt to focus on the term "presented" is misguided for the same reasons described by the *Chambers* court: what qualifies as an item must be determined before it can be said that the item was presented. *See Chambers*, 2020 WL 7261155, at *4; s*ee also Coleman v. Alaska USA Federal Credit Union*, No. 19-CV-229, 2020 WL 1866261, *3-4 (D. Alaska Apr. 14, 2020) (finding ambiguous an account agreement which provided the following: "[i]f available funds are not in the account when a debit is presented for payment, and Overdraft Protection or Courtesy Pay are not available, the item will be returned unpaid. A fee will be assessed for each returned item"). The Agreement does not state that an NSF fee may be assessed when a debit item is presented *for payment by a merchant*, as Defendant would like the Court to believe. The Agreement simply states "[i]f ... a debit item is presented." *See id.* at 5. Thus, whether the term "presented" refers to presentment by the merchant or by the accountholder is unclear.

Much like the courts in *Perks*, *Roy*, *McNeil*, *Chambers*, and *Coleman*, the Court here finds that the definition "item" and when items are "presented" is ambiguous. It is unclear whether resubmission of an ACH transaction is part of the same initial ACH transaction or a separate transaction altogether. Because Plaintiff's proposed interpretation of the Agreement is reasonable, her allegations as to her breach of contract claim are sufficient to withstand Defendant's motion to dismiss. Accordingly, Defendant's motion is denied as to Plaintiff's breach of contract claim.

**C.   Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff also alleges that Defendant breached of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 at ¶¶ 55-64. Defendant seeks dismissal of this claim arguing that it fails because Defendant did not breach the terms of the Agreement and, alternatively, it is

---

Cir. 1997). As the drafter of this Agreement, Defendant is not entitled to benefit from

duplicative of Plaintiff's breach of contract claim. *See* Dkt. No. 37-2 at 12. Plaintiff argues that her claim for breach of the covenant of good faith and fair dealing should survive because such claims are permitted where a financial institution abuses its discretion to maximize bank fees. *See* Dkt. No. 38 at 27-28.

"New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2014 WL 1303135, *6 (S.D.N.Y. Mar. 31, 2014) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). "[A] claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." *Id.* (citing *Cordell v. McGraw-Hill Cos., Inc.*, No. 12 Civ. 0637, 2012 WL 5264844, *4 (S.D.N.Y. Oct. 23, 2012) *aff'd,* 525 Fed. Appx. 22 (2d Cir. 2013)). "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim." *ARI & Co., Inc. v. Regent Intern. Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, *8 (S.D.N.Y. Nov. 6, 1997)). "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). When a plaintiff alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, courts routinely dismiss the latter as duplicative.

shortcomings in its own contract.

*Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956, 2014 WL 837050, *6 (S.D.N.Y. Mar. 3, 2014) (collecting cases).

While it is true that a plaintiff is entitled to plead alternative causes of actions, Plaintiff here has pled a duplicative cause of action. Plaintiff alleges that Defendant "breached the covenant of good faith and fair dealing through its NSF fee policies and practices." *See* Dkt. No. 1 at ¶ 61. This is the same conduct underlying her breach of contract cause of action and it is not transformed into a viable claim simply because Plaintiff dresses it up as "bad faith." *Perks*, 444 F. Supp. 3d at 641 ("Plaintiffs' argument that TD breached the implied covenant by using its discretion to interpret the ambiguous contract terms in bad faith is simply a repackaging of their breach-of-contract theory"). Nearly identical claims are regularly dismissed in similar actions. *See Perks*, 444 F. Supp. 3d at 641; *Richard*, 2021 WL 810218, at *14; *Roy*, 2020 WL 5849297, at *10; *Chambers*, 2020 WL 7261155, at *5. Accordingly, Defendant's motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing is granted.

### D. Unjust Enrichment

Finally, Plaintiff asserts an unjust enrichment claim against Defendant. *See* Dkt. No. 1 at ¶¶ 65-71. Defendant seeks dismissal of this claim arguing that an unjust enrichment claim may not be brought because there is an enforceable contract governing the subject matter at issue. *See* Dkt. No. 37-2 at 12-13. In response, Plaintiff argues that alternative pleading is permitted at this early stage. *See* Dkt. No. 38 at 29.

To assert a viable claim for unjust enrichment under New York law, a claimant must allege facts establishing the following: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). Under New York law, there can be no

cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties. *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citations omitted). "[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment[.]" *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664, 2010 WL 3529237, *7 (S.D.N.Y. Aug. 24, 2010) (quoting *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320, 2008 WL 4615896, *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases)). "Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a dispute as to the agreement's validity or enforceability." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009) (citations omitted).

The Federal Rules of Civil Procedure permit alternative pleading at this stage of the litigation. *See* Fed. R. Civ. P. (8)(d) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"). Thus, "at this early stage of the litigation, it is reasonable to permit plaintiffs to plead unjust enrichment claims in the alternative to their breach of contract claims." *Casey v. Citibank*, 915 F. Supp. 2d 255, 265 (N.D.N.Y. 2013) (citation omitted).

Plaintiff cites to this Court's decision in *Story v. SEFCU*, No. 18-CV-764, 2019 WL 2369878 (N.D.N.Y. June 5, 2019), to argue that she may pursue unjust enrichment as an alternative to her breach of contract claim. *See* Dkt. No. 38 at 29. However, in *Story*, there were legitimate questions as to whether the plaintiff ever opted into the contract at issue. *See Story*, 2019 WL 2369878, at *4-5. In an abundance of caution, the Court allowed the unjust enrichment claim to proceed. *See id.* at *6. Here, there is no serious dispute as to whether there was a valid and enforceable contract between the parties. In such circumstances, quasi-contract claims are

routinely dismissed. *See Richard*, 2021 WL 810218, at *16; *Perks*, 444 F. Supp. 3d at 642; *Chambers*, 2020 WL 7261155, at *6; *Coleman*, 2020 WL 1866261, at *6. Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is granted.

### IV. CONCLUSION

After careful review of the record, the parties' arguments, and the applicable law, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 37) is **GRANTED in part** and **DENIED in part**[5]; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 9, 2021
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[5] Only Plaintiff's breach of contract claim survives the motion to dismiss.