UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE PETREY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISIONS FEDERAL CREDIT UNION,<br><br>Defendant. | Civil Action No.:<br>3:20-cv-01147-MAD-ML<br><br>**JURY TRIAL DEMAND** |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Michelle Petrey ("Plaintiff" or "Ms. Petrey"), by her undersigned counsel, on behalf of herself and all persons similarly situated, for her Class Action Complaint ("Complaint") against Defendant, Visions Federal Credit Union ("Visions" or "Credit Union"), alleges the following:

**INTRODUCTION**

1. When consumers open a checking account with their Credit Union, they have to enter into a standard contract written by the Credit Union and its lawyers. All the Credit Union has to do is honor the contract it wrote and comply with the terms it dictated.

2. Visions promises its customers that if their account balance drops too low to cover a particular item, such as a check, withdrawal, or service charge, Visions will charge the customer a single $30 insufficient funds fee ("NSF Fee") per item. But as Ms. Petrey and consumers all over the country have discovered, Visions doesn't abide by this promise. Instead, Visions routinely charges its customers multiple NSF Fees for the same item, thereby driving their account balances deeper into negative territory.

1

#12780103

3.  Moreover, Visions also assesses NSF Fees even on items that never overdraw an account balance.

4.  Visions' customers have been injured by the Credit Union's improper practices to the tune of millions of dollars taken from their accounts in violation of Visions' clear contractual commitments.

5.  Ms. Petrey, on behalf of herself and two Classes of similarly situated consumers, as defined in this Complaint seeks to end Visions's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts claims against Defendant for breach of contract; breach of the covenant of good faith and fair dealing; violations of state consumer protection law; and/or unjust enrichment, and seeks damages, restitution, and injunctive relief, as alleged in this Complaint.

## PARTIES

6.  Plaintiff is a citizen and resident of Binghamton, Broome County, New York, and holds a Visions FCU checking account.

7.  Visions is engaged in the business of providing retail Credit Union services to consumers, including Plaintiff and the members of the proposed Class(es). Visions maintains its corporate headquarters at 24 McKinley Avenue, Endicott, Broome County, New York. In addition to branches located in the State of New York, Visions also has twelve branches located in the State of New Jersey and ten branches located in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) & (6), this Court has jurisdiction because (a) the proposed Class is comprised of at least 100 members; (b) at least one member of

the proposed Class resides outside of the State of New York; and (3) the aggregate claims of the members of the proposed Class exceed $5 million, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Visions is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    VISIONS CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM**

9. Visions' Account Documents allow it to charge a *single* $25 NSF Fee or a *single* $25 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

10. Visions breaches its contract by charging more than one $25 NSF Fee on the same item because the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11. Visions' abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. Although some other banks or credit unions engage in the same practices as Visions, they clearly disclose those charges in the deposit agreements with their customers.

12. Visions' Deposit Agreement does not say that Visions repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates Visions will only charge a single NSF Fee or OD Fee on an item.

   **A.    Plaintiff's Experience**

13. In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, Visions (a) reprocessed previously declined items and (b) charged an additional fee upon reprocessing, for a total assessment of *$50 in fees on each item*.

14. On October 6, 2014, Plaintiff attempted to make an ACH payment.

15. Visions rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $25 NSF Fee for doing so.  Plaintiff does not dispute this initial fee because it is allowed by Visions' Deposit Agreement.

16. Unbeknownst to Plaintiff, however, and without her request to Visions to reprocess the item, on the next day (October 10, 2014), Visions processed the same item yet again.  Once again, Visions returned the item unpaid and charged Plaintiff *another* $25 NSF Fee for doing so.

17. In sum, Visions assessed Plaintiff $50 in fees in its failed effort to process a single payment.

18. The same pattern occurred on October 20, 2014, and October 24, 2014, with respect to an attempted payment made by Plaintiff.

### B.  The Imposition Of Multiple NSF Fees On A Single Item Violates Visions' Express Promises And Representations

19. Visions' Account Documents state that the Credit Union will assess a single fee of $25 for an item that is returned due to insufficient funds.

20. According to Visions Service Charge Schedule, at most a *single* fee will be assessed when an item is returned or paid into overdraft:

   Non-sufficient Funds on ACH…………….$25

4

#12780103

*See* Visions Service Charge Schedule, "Overdraft/Negative Balance/Returned Check Charges" (May 2013) – Exhibit A to this Complaint.

21. The same check, automatic bill payment, or other electronic payment on an account is not a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

22. The disclosures never discuss a circumstance where Visions may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

23. Even if Visions reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

24. As alleged herein, Plaintiff took only a single action to make a single payment; thus, she created only one item and may be charged only a single fee.

25. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Visions disclose to Plaintiff and Class members that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees; nor do Visions customers ever agree to such fees.

26. Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply

additional attempts to complete the original order or instruction for payment and, as such, will not trigger additional NSF Fees.  In other words, it is always the same item.

27. Banks and credit unions like Visions that employ this abusive multiple fee practice know how to plainly and clearly disclose it.  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their account holders—something that Visions never did.

28. For example, First Hawaiian Bank engages in the same abusive practices as Visions, but at least currently discloses it in its online Banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed September 25, 2019) (emphasis added).

29. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

30. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $25 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

31. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

32. Visions provides no such disclosure and, in so doing, breaches its contracts with account holders, engages in bad faith conduct, and deceives its account holders.

**C.    The Imposition Of Multiple NSF Fees On A Single Item Breaches Visions's Duty Of Good Faith And Fair Dealing**

33. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other contracting party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Credit Union has a duty to honor transaction requests in a way that is fair to Plaintiff and its

7

#12780103

other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements Visions foisted on Plaintiff and its other customers— Visions has provided itself numerous discretionary powers affecting customers' Credit Union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Credit Union abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

34. Visions exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it abuses the power it has over customers and their Credit Union accounts and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

35. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Visions breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

36. It constituted bad faith and totally outside Plaintiff's reasonable expectations for Visions to use its discretion to assess two or three NSF Fees for a single attempted payment.

II. **VISIONS ASSESSES OD FEES ON ITEMS THAT DO NOT OVERDRAW AN ACCOUNT**

37. In plain, clear, and simple language, the contract documents discussing OD Fees promise that Visions will only charge OD Fees as follows: "If neither a Readi-Reserve nor a designated share account alternative is available and an item is **presented without sufficient**

8

**funds in your Checking Account to pay it**, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)" (emphasis added).

38. Contrary to this promise, Visions's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees based on a manufactured balance that it does not disclose.

39. By using this calculation—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee, Visions increases the number of OD Fees it assesses on its accountholders.

40. This manufactured balance is not the official balance of the account and it is not the balance provided to accountholder's in their monthly statements from Visions. As such, it is reasonable for Ms. Petrey and accountholders like her to interpret and understand Visions's use of the term "sufficient funds…in your account" as the official balance in the account, *i.e.* the actual money in the account. Ms. Petrey and class members could not reasonably have expected that Visions would assess OD Fees in this manner.

41. Visions charged Ms. Petrey $30 OD Fees on transactions that did not overdraw her account. For example, on April 14, 2015 and December 3, 2015, Ms. Petrey was assessed OD Fees in the amount of $30 each despite the fact that, according to the bank statement issued by Visions, her account never went negative and always had sufficient funds to cover the transactions on those dates.

## CLASS ACTION ALLEGATIONS

9

#12780103

42. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class(es) include:

> All persons who, within the applicable statute of limitations period, were charged multiple fees on the same item in a Visions account (the "National Retry NSF Class"); and
>
> All persons in the state of New York who, within the applicable statute of limitations period, were charged multiple fees on the same item in a Visions account (the "New York Retry NSF Class").
>
> All Visions checking account holders in the United States who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw their checking accounts (the "National Ledger Balance Class").
>
> All Visions checking account holders in the state of New York who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw their checking accounts (the "New York Ledger Balance Subclass").

43. Excluded from the Class(es) are Visions and its subsidiaries, affiliates, and any entities in which it has a controlling interest, and each of the officers, directors, immediate family members, legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

44. Plaintiff reserves the right to modify or amend the definition of the proposed Class(es) and/or to add subclass(es) if necessary before this Court determines whether certification is appropriate under Rule 23.

45. The questions presented here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class(es). These questions predominate over questions that may affect only individual Class members because

Visions has acted on grounds generally applicable to the Class(es). Such common legal or factual questions include, but are not limited to:

a) Whether Visions improperly charged multiple fees on the same item;

b) Whether Visions improperly assessed OD Fees on items that did not overdraw an account;

c) Whether any of the conduct alleged in this Complaint violates the contract;

d) The appropriate measure of damages or other remedies available to Plaintiff and the members of the Class(es).

46. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to discovery, the Class(es) consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Visions' records. Visions has the administrative capability through its computer systems and other records to identify all members of the Class(es), and such specific information is not otherwise available to Plaintiff.

47. It is impracticable to bring Class members' individual claims before the Court. Class action treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

48. Plaintiff's claims are typical of the claims of the other members of the Class(es) because such claims arise out of the same wrongful business practices engaged in by Visions, as described in this Complaint.

49. Plaintiff is more than an adequate representative of the Class(es) because she has a Visions checking account and has suffered damages as a result of Visions' contract violations, Visions' violations of the covenant of good faith and fair dealing, and Visions' unjust enrichment. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Class(es);

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

50. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

51. Visions has acted or refused to act on grounds generally applicable to each of the Class(es), thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Class(es) as a whole.

52. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class(es))

53. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

54. Plaintiff and Visions contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

55. Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

56. No contract provision authorizes Defendant to charge more than one NSF Fee on the same item.

57. Defendant has breached its contracts with Plaintiff and the Class(es) through its NSF Fee and OD Fee policies and practices as alleged herein.

58. Plaintiff and the members of the Class(es) have performed all of the obligations on them pursuant to the Credit Union's agreements.

59. Plaintiff and members of the Class(es) have sustained monetary damages as a result of each of Visions' breaches of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class(es), demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Class(es) pursuant to Rule 23(a)(1)-(4) & (b)(3), appointing the Plaintiff as representative of the Class(es), and appointing counsel for Plaintiff as lead counsel for the Class(es);

B. Declaring that Visions' policies and practices, as described in this Complaint, constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Visions from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Visions by Plaintiff and the members of the Class(es) as a result of the wrongs alleged herein in an amount to be determined at trial;

E.   Compelling disgorgement of the ill-gotten gains derived by Visions from its misconduct;

F.   Awarding actual and/or compensatory damages in an amount according to proof;

G.   Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.   Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with the prosecution of this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.   Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable.

Dated:  January 20, 2022

WILENTZ, GOLDMAN & SPITZER, P.A.

By:   */s/ Kevin P. Roddy*
      KEVIN P. RODDY (NYSBA #652585)
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
E-mail:  kroddy@wilentz.com

THE KICK LAW FIRM, APC
TARAS KICK* (CA Bar # 143379)
JEFFREY C. BILS* (CA Bar # 301629)
815 Moraga Drive
Los Angeles, CA  90049
Telephone:  (310) 395-2988
E-mail:  taras@kicklawfirm.com
         jeff@kicklawfirm.com

KALIEL PLLC
JEFFREY KALIEL*
SOPHIA GOLD*
1875 Connecticut Avenue, N.A., 10th Floor
Washington, DC  20009

14

#12780103

          Telephone:  (202) 320-4783
          E-mail:   jkaliel@kalielpllc.com
                  sgold@kalielpllc.com

*Pro Hac Vice* Motions to be filed

Attorneys for Plaintiff and the Proposed Class(es)

15

#12780103