**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHELLE PETREY, on behalf of herself | ) | |
| and all others similarly situated, | ) | Civil Action No. 3:20-cv-1147-MAD-ML |
| | ) | |
| Plaintiff, | ) | District Judge Mae A. D'Agostino |
| v. | ) | |
| | ) | |
| VISIONS FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND**
**APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**

Plaintiff respectfully submits the following Memorandum of Law in Support of their

Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys'

Fees, Costs and Service Award.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................................1

II.   BACKGROUND ..................................................................................................................2

    A.    PROCEDURAL HISTORY ......................................................................................2

    B.    THE SETTLEMENT TERMS ..................................................................................6

        1.    The Settlement Class..................................................................................6

        2.    Relief for the Benefit of the Settlement Class .........................................7

            a.    Settlement Fund & Settlement Administration Costs..................7

            b.    Practice Change – Modified Disclosures ....................................8

        3.    Releases.....................................................................................................8

        4.    The Notice Program...................................................................................9

        5.    Class Representative's Service Award .....................................................10

        6.    Attorneys' Fees and Costs ......................................................................11

III.  ARGUMENT ......................................................................................................................12

    A.    The Legal Standard for Final Approval ..................................................................12

    B.    This Settlement Satisfies the Criteria for Final Approval.......................................12

        1.    This Settlement Is the Product of Good Faith, Informed and Arm's Length
                Negotiations ............................................................................................13

        2.    The Facts Support a Determination That the Settlement Is Fair, Adequate and
                Reasonable. ............................................................................................14

            a.    The Risks of Establishing Liability and Damages Demonstrate That This
                      Settlement is Within the Range of Reasonableness in Light of All
                      Attendant Risks of Litigation and Relative to the Best Possible
                      Recovery. ...............................................................................15

            b.    The Reaction of Settlement Class Members to the Proposed Settlement..18

            c.    The Expense, Complexity, and Likely Duration of Further Litigation
                      Favor Settlement. ...................................................................18

            d.    The Risk of Maintaining Class Action Status Throughout Trial Favors
                      Settlement. .............................................................................19

|   |   | e. | The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement .............................................................................. 20 |
|---|---|---|---|
|   |   | f. | Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members Favor Approval .......................................................... 21 |
|   |   | g. | The Terms of Any Proposed Award of Attorneys' Fees Favor Approval . 22 |
| C. | Notice to the Settlement Class Was Adequate and Satisfied Rule 23 and Due Process ...................................................................................................... 22 |   |   |
| D. | Certification of the Settlement Class Is Appropriate ................................... 23 |   |   |
| E. | Notice Pursuant to the Class Action Fairness Act (CAFA) ......................... 24 |   |   |
| F. | Application for Attorneys' Fees .................................................................. 24 |   |   |
|   | 1. | The Standard for Awarding Attorneys' Fees to Class Counsel ......................... 25 |   |
|   | 2. | Goldberger Factors ........................................................................... 26 |   |
|   |   | a. | The Magnitude and Complexities of Litigation ........................................ 26 |
|   |   | b. | Risks of Litigation ................................................................................ 27 |
|   |   | c. | Quality of Representation ..................................................................... 27 |
|   |   | d. | Requested Fee in Relation to the Settlement ............................................ 28 |
|   |   | e. | Public Policy Considerations ................................................................ 30 |
|   |   | f. | The Time and Labor Expended by Counsel and Lodestar Cross-Check ... 30 |
| G. | Application for Service Award .................................................................... 33 |   |   |
| H. | Reimbursement of Costs ............................................................................. 33 |   |   |
| IV. | CONCLUSION ............................................................................................... 34 |   |   |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997) ......................................................................................................24

*Anyoku v. World Airways* (In re Nig. Charter Flights Litig.),
 No. MD 2004-1613 (RJD)(MDG), 2011 U.S. Dist. LEXIS 155180
 (E.D.N.Y. Aug. 25, 2011) ............................................................................................28

*Arbuthnot v. Pierson*,
 607 F. App'x 73 (2d Cir. 2015) ....................................................................................24

*Baudin v. Res. Mktg. Corp., LLC*,
 No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280 (N.D.N.Y. Aug. 13, 2020)...24

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ..............................................20

*Bodnar v. Bank of Am., N.A.*,
 No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) .................................17

*Charron v. Weiner*,
 731 F.3d 241 (2d Cir. 2013) .........................................................................................18

*Christine Asia Co. v. Jack Yun Ma*,
 No. 1: 15-md-02631, 2019 U.S. Dist. LEXIS 179836
 (S.D.N.Y. Oct. 16, 2019) ............................................................... 12, 14, 15, 19, 20

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ...................................................................................12, 14

*City of Providence v. Aéropostale, Inc.*,
 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ..............................................32

*Cruz v. Sal-Mark Rest. Corp.*,
 No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529 (N.D.N.Y. Jan. 28, 2019)............ 32

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001) ......................................................................................13, 15

*Deposit Guar. Nat'l Bank v. Roper*,
 445 U.S. 326 (1980) ......................................................................................................30

*Dornberger v. Metro. Life Ins. Co.*,
 203 F.R.D. 118 (S.D.N.Y. 2001).................................................................................22

*Ferrick v. Spotify USA Inc.*,
No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083 (S.D.N.Y. May 22, 2018) ................20

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................................33

*Fresno Cty. Emps.'s Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
925 F.3d 63 (2d Cir. 2019) .................................................................................................25

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ...........................................................14, 25, 26, 27, 30

*Goodwin v. Boesky* (In re Ivan F. Boesky Sec. Litig.),
888 F. Supp. 551 (S.D.N.Y. 1995) ......................................................................................31

*Guevoura Fund Ltd. v. Sillerman,*
No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) .....15, 16,
17, 19, 28, 33

*Guippone v. BH S&B Holdings LLC,*
2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sep. 23, 2016)................................................19, 20

*Hawthorne v. Umpqua Bank,*
No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) .................17

*In re Austrian and German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................................21

*In re Checking Account Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562 (S.D. Fla. Aug. 2, 2013) ...........17

*In re Checking Account Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015) ..........17

*In re Colgate-Palmolive Co. ERISA Litig.,*
36 F. Supp. 3d 344 (S.D.N.Y. 2014) .......................................................................25, 30, 32

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................17

*In re GSE Bonds Antitrust Litig., No. 19-cv-1704*
(JSR), 2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) .........................................12

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. ....................22

*In re Platinum & Palladium Commodities Litig.,*
No. 10cv3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015) .................................32

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-cv-06728-CM-SDA,2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) ......19

*In re Sinus Buster Prods. Consumer Litig.*,
   2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014) ...................................................14

*James v. China Grill Mgmt.*,
   2019 U.S. Dist. LEXIS 72759 (S.D.N.Y. Apr. 30, 2019) ........................................................32

*Johnson v. Brennan, No.*,
   No. 10-cv- 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sep. 16, 2011) .........................32

*Johnson v. Cmty. Bank, N.A.*,
   No. 3:12-CV-01405, 2013 U.S. Dist. LEXIS 167319 (M.D. Pa. Nov. 25, 2013) ..................32

*Kirby v. FIC Rest., Inc.*,
   No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109 (N.D.N.Y. Sep. 28, 2020).....32

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
   No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043
   (N.D.N.Y. June 17, 2016)..........................................................................................................32

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................................................................21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ..................................................... 28

*Mosser v. TD Bank, N.A.*,
   No. 1:09-MD-02036-JLK,2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013) ..........17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ....................................................................................................15

*Raniere v. Citigroup Inc.*,
   310 F.R.D. 211 (S.D.N.Y. 2015) .......................................................................................25, 26

*Roberts v. Capital One, N.A.*,
   719 F. App'x 33 (2d Cir. 2017), ..........................................................................................26, 27

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................................17

*Thompson v. Metropolitan Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................17

*Times v. Target Corp.*,
   No. 18 Civ 02993, 2019 U.S. Dist. LEXIS 189101 (S.D.N.Y. Oct. 29, 2019) ......................33

*Torres v. Bank of Am.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................................17

*Torres v. Gristede's Operating Corp.*,
No. 04-CV-3316 (PAC), 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ............33

*Torres v. Gristede's Operating Corp.*,
519 F. App'x 1 (2d Cir. 2013) ...............................................................................26

*Trombley v. Nat'l City Bank*,
826 F. Supp. 2d 179 (D.D.C. 2011) ........................................................................17

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12cv275*
(DLC), 2015 U.S. Dist. LEXIS 49477 (S.D.N.Y. Apr. 15, 2015) ...........................32

*United States v. Glens Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998) ...................................................................................19

*Wal-Mart Stores v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................. *passim*

## Rules and Statutes

28 U.S.C. Section 1715(b) ...........................................................................24, 25

Federal Rules of Civil Procedure 23 ............................................................... *passim*

Federal Rules of Civil Procedure 23(a) ................................................................23, 34

Federal Rules of Civil Procedure 23(b)(3) ...........................................2, 6, 23, 24, 34

Federal Rules of Civil Procedure 23(e) ..........................................................12, 14, 15

Federal Rules of Civil Procedure 23(e)(2) ......................................................12, 14, 21

Federal Rules of Civil Procedure 23(e)(3) ................................................................12

New York General Business Law § 349 et seq. .............................................................2

## Other

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,*
7 J. Empirical Legal Stud. 811 (2010) ...................................................................28

## I.    INTRODUCTION

Plaintiff Michelle Petrey submits this Memorandum of Law in Support of her Unopposed Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs and Service Award.[1] The Settlement Agreement, if approved, will resolve all claims against Defendant Visions FCU in the Action. The Settlement should be finally approved because it provides substantial relief for the Settlement Class and the Settlement terms are reasonable and consistent with Second Circuit precedent.

Only after a ruling on a motion to dismiss, a contested motion to amend to add new claims, a contentious discovery effort; only after a detailed analysis of transactional data to determine damages; and, only after two mediations in front of a well-respected neutral, the Parties reached an agreement to resolve this matter. Given the material risks inherent in this Action, the Settlement is an excellent result for the Settlement Class. The Settlement provides $1,770,000 in cash for the Settlement Class. Further, as result of this litigation, Defendant has improved its disclosures of the challenged practices.

Keystones of the Settlement include that the Settlement Fund will automatically be distributed or credited to Settlement Class Members with no claims process and no reversion to Visions FCU. Visions FCU's data is used to determine which checking Account holders incurred Relevant Fees, and a formula is applied to calculate each Settlement Class Member's distribution. The allocation plan fairly and adequately accounts for the value of each Settlement Class Member's damages. Class Counsel is seeking attorneys' fees of 33.33% of the Settlement Fund, reimbursement of reasonable costs, and a $5,000.00 Service Award for the Plaintiff.

---

[1] All capitalized terms in this memorandum shall have the same meanings as those defined in the Settlement Agreement.

Since Preliminary Approval of the Settlement on December 6, 2022, the Settlement Administrator properly completed the Court-approved Notice Program. To date, no Settlement Class Member has objected to the Settlement, Class Counsel's request for attorneys' fees and costs, or the Service Award, and no Settlement Class Members have opted-out of the Settlement. The absence of objections and opt-outs to date shows that the Settlement Class fully supports approval of the Settlement and that it warrants Final Approval.[2]

In support of the Motion, Plaintiff submits the Declaration from Co-Class Counsel Jeffrey D. Kaliel ("Kaliel Decl."),[3] attached as ***Exhibit B***, and the Declaration from the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit C***. Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3); (3) appoint Plaintiff as Class Representatives; (4) appoint Class Counsel; (5) grant Class Counsel's Application for Attorneys' Fees and Costs and Service Award; and (6) enter Final Judgment dismissing the Action with prejudice.

## II.    <u>BACKGROUND</u>

### A.    <u>Procedural History</u>

On September 21, 2020, Plaintiff Petrey filed a putative class action complaint in the Action seeking – among other things – damages, restitution, and declaratory relief arising from the allegedly unfair and unconscionable assessment and collection of Retry NSF Fees. Doc. 1. On January 11, 2021, Defendant filed a Motion to Dismiss. Doc. 37. On February 1, 2021, Plaintiff opposed that Motion. The Court denied the Motion to Dismiss on June 9, 2021. Doc. 45.

---

[2] Should any objection be asserted following the filing of this Motion, a response will be filed.
[3] In its Order Granting Preliminary Approval, the Court appointed both The Kick Law Firm, APC and KalielGold PLLC as Co-Class Counsel.

The Court issued several scheduling orders throughout the litigation of the Case and the Parties vigorously pursued discovery pursuant to those Order. In particular, Plaintiff served document requests and interrogatories on January 18, 2022, to which Defendant served its written responses. Kaliel Decl., at ¶ 2. The Parties met and conferred several times on alleged discovery deficiencies. *Id.*, ¶ 3.

On December 3, 2021, after further investigation and analysis of discovery materials produced by that time, Plaintiff moved to amend the Complaint, adding a new theory of liability based on alleged improper assessment of overdraft fees for APPSN transactions. *Id.*, ¶ 4. The Court granted that motion on January 18, 2022, Doc. 69.

Discovery proceeded apace. Plaintiff noticed a Rule 30(b)(6) deposition of Visions for March 8, 2022. Kaliel Decl., ¶ 5. Defendant scheduled a deposition of Plaintiff Petrey for March 28, 2022. *Id.*, ¶ 6. Those depositions remained scheduled until this Settlement was reached shortly before they were scheduled to proceed.

The discovery process, although professional, was often contentious. *Id.*, ¶ 7. Counsel for the Parties met and conferred on various occasions regarding Visions' discovery responses. After the Parties were unable to reach agreement on the scope of additional document production, information and testimony, including complex electronic discovery, Plaintiff drafted a motion to compel additional discovery responses. *Id.*, ¶ 8. Just before that motion was filed, the Parties reached an interim compromise on the contested discovery issues. *Id.*, ¶ 9.

On February 11, 2022, the Parties participated in a mediation before Hon. Thomas Mercure (Ret.). The Parties did not settle at the mediation. *Id.*, ¶ 10. The Parties undertook further data analysis, then reconvened for a second mediation on March 18, 2022. *Id.*, ¶ 11.

The second mediation session also did not result in a settlement, but the Parties continued

discussions that ultimately resulted in an agreement in principle. On April 4, 2022, the Parties filed

a Status Report with the Court, confirming their agreement in principle and requesting that the

Court stay all deadlines in the Action.  Doc. 90.

 Further negotiations by the Parties resulted in the Settlement reflected in the Agreement.

### A.    Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs

against Visions FCU. Kaliel Decl., at ¶ 12. Class Counsel interviewed a number of Visions FCU

customers to gather information about Visions FCU's disclosures and practices and their potential

impact upon consumers, which was essential to counsels' ability to understand the nature of the

potential claims and issues, the language of the Account agreement and other documents at issue,

and potential remedies. *Id*. at ¶ 13.  Class Counsel expended significant resources researching and

developing the legal claims at issue. *Id*. at ¶ 14. They are familiar with the claims as they have

litigated and resolved other fee claims with similar factual and legal issues. Class Counsel has

experience in understanding the damages at issue, the information critical to determine class

membership, and the necessary data to calculate each Settlement Class Member's damages.  The

issues were heavily contested throughout the litigation. *Id*. at ¶ 15.   Class Counsel, along with its

data analysis expert, spent a significant amount of time analyzing data regarding Visions FCU's

fee revenue related to the assessment of the APPSN Fees and the Retry NSF Fees at issue. *Id*. at ¶

16. The Parties conferred regarding the calculations' accuracy, with Visions FCU retaining its own

expert. Prior to the first mediation, Class Counsel and Plaintiff's expert used this data to analyze

the damages at issue. *Id*.  Additional data analysis was performed prior to the second mediation as

well. *Id*.

Consequently, Class Counsel mediated with Judge Mercure fully informed of the merits of

Settlement Class members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Settlement Class members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiff and the Settlement Class. *Id*. at ¶ 17. After the first and second mediation, Judge Mercure continued to actively participate in the settlement discussions and helped the Parties reach an acceptable compromise. *Id*. at ¶ 18.

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiff, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery, working with an expert witness, and reviewing important documents and data. *Id*. at ¶ 19. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

## B.    THE SETTLEMENT TERMS

### C.    The Settlement Class.

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "all current and former members of Defendant with consumer accounts, who were charged a Relevant Fee during the Class Period.  Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members." Agreement at ¶ 49. Relevant Fees include both APPSN Fees and Retry NSF Fees. *Id*. at ¶ 43. The Class Period is from September 21, 2014, to April 30, 2022. *Id*. at ¶ 19.

### D.    Relief for the Benefit of the Settlement Class.

#### 1.    Settlement Fund

The Settlement Fund is $1.77 million and will be used to: (a) pay Settlement Class

Members their respective cash Settlement Class Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Class Representative; (d) Settlement Administration Costs; and (e) if funds remain after the initial distribution to Settlement Class Members to distribute to the *cy pres* recipient. Agreement at ¶ 72.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 90 days following the Effective Date of the Settlement, Visions FCU and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id* at ¶ 72(d).

2. <b>Allocation of the Settlement Class Member Payments</b>

Of the $1,770,000 paid into the Settlement Fund, $1,171,740 (66.2%) is allocated to the APPSN Fee Class and $598,260 (33.8%) is allocated to the Retry NSF Fee Class. *Id* at ¶ 72(d). This allocation of 66.2%-33.8% reflects the ratio between the APPSN and Retry NSF damages. (Kaliel Decl. ¶ 28.)  If applicable, Settlement Class Members may receive payments as members of the APPSN Fee Class and the Retry NSF Fee Class. *Id*. Based on this allocation, payments from the Net Settlement Fund to the Settlement Class Members shall be calculated as follows:

    i.                Settlement Class Members of the APPSN Fee Class shall be paid per incurred APPSN Fee calculated as follows: (0.662 of the Net Settlement Fund/Total APPSN Fees) x Total number of APPSN Fees charged to and paid by each APPSN Fee Class member; and

    ii.               Settlement Class Members of the Retry NSF Fee Class shall be paid per Retry NSF Fee calculated as follows: (0.338 of the Net Settlement Fund/Total Retry NSF Fees) x Total number of Retry NSF Fees charged to and paid by each Retry NSF Fee Class member.

6

*Id* at ¶ 72 (d)(i-ii).

### 3.    **Distribution of Settlement Class Member Payments**

Settlement Class Members who are Current Account Holders when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to any account they are maintaining individually at the time of the credit. *Id.* at ¶ 72(d)(iii). If by the deadline to apply credits of Settlement Class Member Payments to accounts Visions FCU is unable to complete certain credit(s), Visions FCU shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Account Holders to receive payment. *Id.*

For Settlement Class Members who are Past Account Holders when the Net Settlement Fund is distributed or at that time do not have an individual account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.*  For jointly held accounts, checks will be payable to all customers and mailed to the first customer listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* The Settlement Class Member shall have one-hundred eighty (180) days to negotiate the check. The total value of checks uncashed after 180 days shall be distributed to a Court-approved *cy pres* recipient. *Id.*

### 4.    **Disposition of Residual Funds**

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall be distributed to

an appropriate *cy pres* recipient agreed to by the Parties and approved by the Court. *Id.* at ¶ 73. In no event shall any portion of the Settlement Fund revert to Visions FCU. *Id.* at ¶ 72 (iv).

### E.    Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Visions FCU from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

### F.    Settlement Administration

The Settlement Administrator is one of the leading class action settlement administrators in the United States. Its Settlement Administration responsibilities are delineated in the Agreement. *Id.* at ¶ 64.

### G.    Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement at ¶ 80-83. Visions FCU also may terminate the Settlement if 5% or more of the total Settlement Class members opt-out. *Id.*, at ¶ 80.

## II.    <u>ARGUMENT</u>

### A.    The Legal Standard for Final Approval.

Courts, including the Second Circuit, have emphasized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.' The Court considers a number of factors laid out in Rule 23(e)(2), as well as in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000), to determine whether this standard has been met." *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *10 (S.D.N.Y. June 16, 2020).

> At the final approval stage, Rule 23(e)(2) requires courts to consider whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[4] and
> (D) the proposal treats class members equitably relative to each other.

To evaluate the Settlement's fairness, the Court must examine its procedural fairness under Rule 23(e)(2)(A)-(B) and substantive fairness under 23(e)(2)(C)-(D). *Kirby v. FIC Rest., Inc.,* No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109, at *4 (N.D.N.Y. Sep. 28, 2020). Both are satisfied.

### B.    This Settlement Satisfies the Criteria for Final Approval.

The relevant factors weigh in favor of Final Approval. First, the Settlement was reached in the absence of collusion, and is the product of good faith, informed and arm's length negotiations by competent counsel, making it procedurally fair. Furthermore, a review of the substantive factors related to the Settlement's fairness, adequacy and reasonableness demonstrates that Final Approval is warranted. Any settlement requires the parties to balance the claims' merits and the defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes she asserted meritorious claims and would prevail if this matter proceeded to trial. Visions FCU argues the

---

[4] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

claims are unfounded, denies any potential liability, and up to the point of settlement indicated a willingness to litigate those claims vigorously. Kaliel Decl. ¶ 20. The Parties concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing class discovery, pretrial motion practice, trial, and finally appellate review. *Id.*

C.    **This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.**

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and with the legal and factual issues of this Action—all occurring before a well-respected neutral with an expertise in these kinds of financial services cases. *Id.* ¶ 21. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry. Kaliel Decl. ¶ 22. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving overdraft fees across the country. *Id.* ¶ 23. Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive discovery throughout this Action. *Id.* ¶ 24. Class Counsel reviewed Visions FCU's document production, reviewed the arguments it made in its motion to dismiss and opposition to the Plaintiff's motion to amend the complaint, and reviewed a separate production

of transactional data and engaged a data expert to analyze Visions FCU's sample data to determine whether a class could be ascertained and to support Plaintiff's future motion for class certification. *Id*. ¶ 25. Class Counsel was able to accurately evaluate the strengths and weakness of Plaintiff's claims. *Id*. ¶ 26. Finally, Class Counsel used an experienced mediator to achieve this Settlement. This factor, too, supports Final Approval.

### D.    The Facts Support a Determination That the Settlement Is Fair, Adequate and Reasonable.

A review of the relevant factors supports a determination that the Settlement should be finally approved under Rule 23(e)(2). The Second Circuit has identified nine *Grinnell* factors that should be considered in determining the substantive fairness of the Settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. In applying these factors, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Marroquin Alas v. Champlain Valley Specialty of N.Y.*, Inc., No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043, at *11 (N.D.N.Y. June 17, 2016). As applied here, the *Grinnell* factors weigh heavily in favor of Final Approval.[5] These factors remain applicable even after the

---

[5] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, this standing alone is not reason to reject the Settlement. *In re Sinus Buster Prods. Consumer Litig.*, 2014 U.S. Dist. LEXIS 158415, at *26 (E.D.N.Y. Nov. 10, 2014) (collecting cases); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *26-27 (S.D.N.Y. Dec. 18, 2019) ("[T]he ability of defendants to pay more, on its own, does not render the settlement unfair. Rather, the reasonableness of the Settlement is better analyzed in light of the amount of the Settlement compared to the substantial

2018 amendment of Rule 23(e), which clarified the factors quoted above. *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *37 (S.D.N.Y. Oct. 16, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors.").

            1.    <u>The Risks of Establishing Liability and Damages Demonstrate That This Settlement is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery</u>

Courts typically analyze the final two *Grinnell* factors together, the range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *22 (N.D.N.Y. Aug. 13, 2020); *Marroquin Alas*, 2016 U.S. Dist. LEXIS 79043, at *14; *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *16 (N.D.N.Y. Jan. 28, 2019). The Court must decide if the Settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The $1.77 million Settlement Fund is an excellent result given the Action's complexity and the significant litigation barriers looming without settlement. The dispute centers on Visions FCU's allegedly unfair and misleading assessment of APPSN Fees and Retry Fees. With this Settlement, Plaintiff has achieved her desired goal of compensating class members charged such fees during the Class Period. While Plaintiff's best-case scenario is a 100% refund of the APPSN

---

risks Lead Plaintiff faced in proving liability and damages, and not on whether the Director Defendants could have paid more.") (quotations omitted); *accord D'Amato*, 236 F.3d at 86.

Fees and Retry Fees paid, there was a substantial risk that Plaintiff would not achieve such a result. Prior to Settlement, Visions FCU had already filed a motion for summary judgment and indicated it would file another such motion. Success on the merits was not certain. Visions FCU contends that the relevant Account agreements are unambiguous, and even if they were ambiguous, the extrinsic evidence resolves the ambiguity in its favor on the whether the fees at issue are permitted. Thus, although Plaintiff believes she has a strong case, Plaintiff might not certify the classes or would lose at summary judgment or trial, or on appeal. Kaliel Decl. ¶ 27.

The cash Settlement Fund represents approximately 55% of the APPSN Fees and Retry Fees allegedly wrongly charged and paid by the Settlement Class, without the inherent litigation risks, is a very fair and reasonable recovery. This allocation of 66.2%-33.8% reflects the ratio between the APPSN and Retry NSF damages. (Kaliel Decl. ¶ 28.) This is an excellent result when compared to the results in other bank fee cases and considering the significant risks remaining for the Settlement Class. Kaliel Decl. ¶ 28. "The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *30 (S.D.N.Y. Dec. 18, 2019) (internal citation omitted).

Moreover, while Plaintiff and Class Counsel are confident their case is strong, they are also pragmatic in their awareness of Visions FCU's defenses, and the risks inherent to litigation despite defeating Visions FCU's motion to dismiss, as well as establishing both liability and damages. This is a crucial factor favoring settlement, as Courts routinely approve settlements where parties would have faced significant legal and factual obstacles to establishing liability. *Cruz*, 2019 U.S. Dist. LEXIS 13529 at *14 ("[l]itigation inherently involves risks."). "In analyzing these factors, the adequacy of the amount offered in settlement must be judged 'not in comparison with the

possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Guevoura Fund Ltd*, 2019 U.S. Dist. LEXIS 218116, at *28.[6]

This Settlement either meets or exceeds dozens of court-approved recoveries in overdraft fee class actions, including one supervised by this Court. *See, e.g., Kelly v. Community Bank, N.A.*, No. 8:19-cv-919-MAD-CFH (N.D.N.Y. Feb. 18, 2020) (D'Agostino, J.) (recovery of 39% of damages); *Roberts v. Capital One, N.A.*, Case No: No. 16 Civ. 4841 (LGS) (S.D.N.Y. Dec. 2, 2020) ("Class members. . .will receive approximately 35% of the maximum that they could have received."); *Johnson v. Cmty. Bank, N.A.*, No. 3:12-CV-01405, 2013 U.S. Dist. LEXIS 167319, at *17 (M.D. Pa. Nov. 25, 2013) ("the Settlement Fund is estimated at 50% of the most likely recovery"); *see also Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) ($31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) ($2.9 million settlement that was approximately 38% of damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) ($4,000,000 settlement that was 25% of the most probable recoverable damages).

Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement outweighs the gamble of continued litigation. Kaliel Decl. ¶ 29. This Settlement

---

[6] *See also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

provides substantial relief to Settlement Class Members without delay. *Id*. ¶ 30.

Finally, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through multiple mediation sessions at different points in the litigation. *Id.* ¶ 31. These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the best interest of the Settlement Class. *Id.* ¶ 32. Given Class Counsel's experience in these cases, Class Counsel's assessment in this regard is entitled to considerable deference. The benefits are fair and reasonable in light of Visions FCU's defenses, and the challenging and unpredictable litigation path in the absence of settlement. *Id.* ¶ 33.

### 2.    The Reaction of Settlement Class Members to the Proposed Settlement

The Reaction of the Settlement Class has been overwhelmingly positive to date. Out of approximately 36,236 Settlement Class Members, none have opted-out by the day this Motion was filed, and no objections have been filed. Admin Decl. ¶ 24. Following the Opt-Out Period and objection deadline, Class Counsel will file an updated declaration from the Settlement Administrator advising the Court as to any additional opt-outs or any objection.

### 3.    The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement

The traditional means for handling claims like those at issue here would tax the court system, require a large expenditure of public and private resources, and given the relatively small value of the claims of the individual Settlement Class Members, is impracticable. Indeed, the complexity, expense, and likely duration of litigation is critical in evaluating the reasonableness of a class action settlement. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013). Settlements are favored in class actions, which in general have a well-deserved reputation as being most complex. *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *34-35.

Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit. Delay, both at the trial stage, and through post-trial motions and appeals, could force the Settlement Class to wait even longer, further reducing its value.[7] Kaliel Decl. ¶ 34.

Here, Final Approval will mean a present recovery for Settlement Class Members. While Plaintiff believes the Action has merit and that the Settlement Class ultimately would prevail at trial, continued litigation would last for an extended period before any judgment might be entered. *Hanifin v. Accurate Inventory & Calculating Serv.*, No. 11 Civ. 1510, 2014 U.S. Dist. LEXIS 115710, at *13 (N.D.N.Y. Aug. 20, 2014); *Parkis v. Microsoft Corp.*, No. 5:09-CV-110 (FJS/GHL), 2009 U.S. Dist. LEXIS 47880, at *2 (N.D.N.Y. June 4, 2009).

Settling now with the benefit of Visions FCU's analysis of Settlement Class Membership provides immediate and substantial benefits to Settlement Class Members, avoiding the significant costs and risks of continuing litigation, including considerable fees incurred by experts. This factor militates heavily in favor of the Settlement. as "[the settlement of complex class action litigation is favored by the courts." *Cavalieri v. GE*, No. 06cv315 (GLS/DRH), 2009 U.S. Dist. LEXIS 68693, at *4 (N.D.N.Y. Aug. 5, 2009). Settling now on such favorable terms is, therefore, in the Settlement Class's best interests. *See Oneida Indian Nation v. Cty. of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000). Therefore, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner.

    4.    <u>The Risk of Maintaining Class Action Status Throughout Trial Favors</u>

---

[7] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

Settlement

Whether the Action would be tried as a class action is also relevant in assessing the Settlement's fairness. *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *26. As the Court had not yet certified a class when the Agreement was executed, it is unclear whether certification would have been granted. The difficulty of certifying a class favors approving the Settlement. *Guippone*, 2016 U.S. Dist. LEXIS 134899, at *19.[8] Visions FCU intended to vigorously oppose the motion and argue against numerosity, commonality, typicality, adequacy, and predominance. Further, this litigation activity would have required the expenditure of significant resources. Kaliel Decl. ¶ 35. Accordingly, this factor weighs in favor of Final Approval.

> 5.   The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement

This *Grinnell* factor requires that the parties have engaged in sufficient investigation of the facts "such that counsel possessed a record sufficient to permit evaluation of the merits of Plaintiff claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiff's causes of action for purposes of settlement." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *43. Further, "a sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make . . . an appraisal' of the Settlement." *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083, at *31 (S.D.N.Y. May 22, 2018) (alteration in original) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)).  Class Counsel devoted substantial time and resources investigating, litigating, and resolving this case. Plaintiff settled the Action with the benefit of Class Counsel's years of

---

[8] *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 7 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *11 (S.D.N.Y. Aug. 6, 2010) (there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings.").

experience litigating cases like this one, contentious discovery, and data and damage analysis. Kaliel Decl. ¶ 36. Due to their extensive experience, the Parties' counsel is well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. Class Counsel's analysis allowed them to confidently evaluate Plaintiff' claims' strengths and weaknesses, the prospects for success at class certification and trial, and the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settling.

The record provides sufficient information for this Court to determine that the Settlement is fair. Class Counsel have shown their willingness to litigate this action and their past experience shows that they will zealously represent their clients. *Id.* ¶ 37. The litigation has been hard-fought as the Parties have engaged in contentious discovery, and extensive data and damage analysis. Accordingly, this factor also weighs in favor of Final Approval. Plaintiff therefore settled the Action with the benefit of extensive fact, expert, and class discovery.

Given the stage of litigation when the Action settled, the Parties are well aware of the relative strengths and weaknesses of their respective positions, having dealt with Visions FCU's efforts to dismiss the claims at their inception and sufficient discovery. The extensive factual and legal analysis along the way fully informed the Settlement negotiations.

      6.    <u>Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members Favor Approval</u>

Consideration under the Rule 23(e)(2) factor, which asks whether Class members are treated equally relative to each other, also favors approval. Consideration here "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. By distributing Settlement proceeds on a *pro rata* basis, Settlement Class

Members will be treated equitably. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015).   As stated, the allocation between the APPSN and Retry NSF classes is proportionate to the damages in each, and per the allocation formula each member of the class is contracted to receive a proportionate share based on the number of at-issue fees assessed on the class member. (Kaliel Decl. ¶ 28; SA ¶ 72 (d)(i-ii).)

Further, the scope of the Releases applies uniformly to Settlement Class Members and does not affect the apportionment of the relief to Settlement Class Members. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 47 (E.D.N.Y. 2019). The Releases are not a general release of claims against Visions FCU and are instead tailored to the Released Claims as expressly defined in the Agreement. Accordingly, this factor also favors Final Approval.

7.    The Terms of Any Proposed Award of Attorneys' Fees Favor Approval

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Under the Agreement, Class Counsel are entitled to request, and Visions FCU does not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Kaliel Decl. ¶ 39. Upon consideration of the detailed analysis of Class Counsel's application *infra*, this Court should find that this factor weighs in favor of Final Approval.

**C.    Notice to the Settlement Class Was Adequate and Satisfied Rule 23 and Due Process**

In addition to having personal jurisdiction over Plaintiff, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (adequate notice must be fairly understood by the average class member, fairly apprise prospective class members of the proposed settlement

terms and the options open to them and will satisfy due process when it informs class members of

the allocation of attorney's fees and provide the final approval hearing date, time, and place);

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ("Because adequate notice

has been disseminated and all potential Class Members have been given the opportunity to opt out

of this class action, the Court has personal jurisdiction over all Class Members.").

The Notice Program was designed to provide the best notice practicable and was tailored

to take advantage of the information Visions FCU has available about the Settlement Class. It was

reasonably calculated under the circumstances to apprise Settlement Class Members of: the

material terms of the Settlement; the deadline for them to exclude themselves from the Settlement

Class; the deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement

Website address to access the Agreement and other related documents and information. Admin.

Decl. Exs. 1-3. The Notice and Notice Program constituted sufficient notice to all persons entitled

to notice. The Notice Program satisfied all applicable requirements of law, including Fed. R. Civ.

P. 23 and constitutional due process.

The Notice Program has been comprised of three parts: (1) direct Email Notice to Retry

Fee Class and APPSN Fee Class members who have or had agreed to receive Account statements

from Defendant electronically; (2) direct Postcard Notice to Retry Fee Class and Sufficient Funds

Fee Class members who have not agreed to receive notices from Defendant by email, and those

Members who the Settlement Administrator is unable to send Email Notice using the email address

provided by Defendant; and (3) Long Form Notice containing more detail than the Postcard Notice

and Email Notice posted on the Settlement Website and available by U.S. mail on request to the

Settlement Administrator.

Prior to distributing notice to the Class members, the Settlement Administrator established

a website, www.bankfeeclassaction.com, as well as a toll-free line that Class Members could access or call for any questions or additional information about the proposed Settlement. Declaration of Settlement Administrator Regarding Notice and Settlement Administration filed contemporaneously herewith ("Admin Decl.") at ¶¶ 19, 21.

Once Class Members were identified via Visions FCU's business records, the notices attached to the Settlement Agreement were delivered to each Settlement Class Member. For current Visions FCU accountholders who have elected to receive bank communications via email, notice was delivered via email. Admin Decl., ¶ 7.  To former Visions FCU accountholders, and to all current accountholders who have not elected to receive communications by email or for whom Visions FCU does not have a valid email address, notice was delivered by U.S. Mail postcard. *Id.* ¶ 11.

On January 5, 2023, the Settlement Administrator mailed the Court-approved notice of the Settlement to the 2,072 Settlement Class Members who elected to receive notice from Visions FCU by mail, at their last known mailing addresses after updating through the National Change of Address database. *Id.* ¶ 15. For returned notices, the Settlement Administrator performed skip trace searches to attempt to locate an updated address and remail the notice. *Id.* ¶ 17.  In total, mailed Notice was delivered, without return, to 36,236 unique Class members. *Id.* ¶ 18.

Next, on January 5, 2023, the Settlement Administrator emailed the Court-approved notice of the Settlement to 34,164 Class Members who have opted to receive communications from Visions electronically. *Id.* ¶ 10.  This group also includes those Settlement Class Members who elected to receive notices by mail, but whose mailing address was not accurate. In total, emailed Notice was delivered, without return, to 36,236 unique Settlement Class Members. *Id.* ¶ 19.

In response to the notice, to date no Settlement Class Member objected to the Settlement.

Admin. Decl., ¶ 24. No Settlement Class Members have so far elected to opt-out of the Settlement. *Id.*, ¶ 23.

The Settlement Administrator also established and maintains an automated toll-free telephone line to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. Admin. Decl. ¶ 22. As of January 31, 2023, a total of 54 calls have been made to the toll-free hotline for a total of 113 minutes. Admin. Decl. ¶ 23. Additionally, 175 unique visitors accessed the Settlement Website, viewing 285 pages. Admin. Decl. ¶ 21.

### D. Certification of the Settlement Class Is Appropriate.

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class for Settlement purposes. (ECF # 171). Now, for Settlement purposes, Plaintiff respectfully requests that the Court finally certify the Settlement Class. As explained at Preliminary Approval, certification for settlement purposes is appropriate under Fed. R. Civ. P. 23(a) and (b)(3) because:

(1) the Settlement Class of 36,236 Settlement Class Members is so numerous that joinder of all members is impracticable, Kaliel Decl. ¶ 39;

(2) there are questions of law or fact common to the Settlement Class including whether Visions FCU's alleged systematic practice of assessing Relevant Fees breached its contract, *Id.* ¶ 40;

(3) Plaintiff is typical of absent members of the Settlement Class as they were subjected to the same Visions FCU practices leading to the assessment of fees and suffered from the same injuries, and she will benefit equally from the Settlement relief, *Id.* ¶ 41; and

(4) Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent Settlement Class Members have the

same interest in the Settlement's relief, and the absent Settlement Class Members have no diverging interests, *Id.* ¶ 42. Plaintiff is represented by qualified and competent counsel who devoted substantial time to the litigation and have extensive experience and expertise prosecuting complex class actions, including actions like the instant case. *Id.* ¶ 43.

Further, resolution of several thousand claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).[9] For these reasons, the Court should certify the Settlement Class.

### E.    Notice Pursuant to the Class Action Fairness Act (CAFA)

CAFA requires a settling defendant to give notice of a proposed class settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). The Settlement Administrator served the CAFA Notice, along with a CD containing the documents described in Section 1715(b). *See* Admin. Decl. ¶ 5. The CAFA notice protects class members from a settlement that may be deemed unfair or inconsistent with regulatory policies and from class action abuse. No regulatory authorities have objected to date.

### F.    Application for Attorneys' Fees

In this common fund Settlement, the Notices to Settlement Class Members provided that Class Counsel would request an attorneys' fee of 33.33% of the Settlement Fund, an amount that

---

[9] "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

equals to $589,999.[10] As of filing this Motion, there are zero objections to that fee amount, which again was prominently stated in each of the class notices. Class Counsel's application is subject to this Court's approval to compensate them for their time, risk, and expenses incurred pursuing claims for the Settlement Class. While discretionary, to the extent that the Court wishes to perform a lodestar cross-check, it should be noted that there is a very modest 1.27- lodestar multiplier as a result of the hard work Class Counsel performed. Kaliel Decl. ¶ . For the reasons stated below, Class Counsel's application should be approved.

### 1. **The Standard for Awarding Attorneys' Fees to Class Counsel**

"[A]…lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit recognizes that a lawyer whose efforts create a common fund should recover a reasonable fee. *Central States Southeast & Southwest Areas v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007).

In common fund settlements, courts in this Circuit typically look at the percentage-of-the-fund method, with an optional lodestar crosscheck. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The "'percentage of the fund' method, [ ] is the trend in this Circuit." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121). Class Counsel is entitled to "a reasonable fee – set by the court – to be taken from the fund." *Goldberger*, 209 F.3d 50; *see also* Fed. R. Civ. P. 23(h). *See also Fresno Cty. Emps.'s Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("The common-fund doctrine is . . . rooted in the courts' 'historic power of equity to permit' a person

---

10 Class Counsel The Kick Law Firm, APC and KalielGold PLLC intend to pay local counsel Wilentz, Goldman, & Spitzer ten percent of the fees awarded by this Court, and to share equally in the remainder of the fees awarded.

who secures a fund for the benefit of others to collect a fee directly from the fund." (citation omitted)).

In addition to being far simpler, awarding a percentage of the fund is preferred and "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 348 (quoting *Wal-Mart Stores*, *Inc.*, 396 F.3d at 121). This method further incentivizes class counsel to obtain the largest possible recovery in the most efficient manner possible. *Id.* "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and 'compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 121). *See also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 3 (2d Cir. 2013) (trial courts evaluating fee requests "need not, and indeed should not, become green-eyeshade accountants").

The percentage method is an appropriate method of fee recovery here because, among other things, it aligns Class Counsel's interest in being paid a fair fee with the Settlement Class's interests. It achieves the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the current trend in the Second Circuit.

The 33.33% of the Settlement Fund requested fee is within the range of reason when considering the foregoing and when analyzing the following guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in

relation to the settlement, and (6) public policy considerations. 209 F.3d at 50.[11] Kaliel Decl. ¶ 45.

### 2.    *Goldberger Factors*

#### a.    The Magnitude and Complexities of Litigation

The magnitude and complexity of the litigation weighs in favor of approval. *Raniere*, 310 F.R.D. at 221. This Action is complex presenting novel factual and legal issues, which have yet to be tried in this Court or others. *Id.*; *see also* Kaliel Decl. ¶ 46. Legally, the case involved complex issues which required guidance from the Second Circuit in a similar case, *Roberts v. Capital One, N.*A., 719 F. App'x 33 (2d Cir. 2017). Factually, the case was difficult as it involved the detailed review of back-end transactional data from Visions FCU, as review of several different versions of binding account contracts during the relevant limitations period. The fundamental contract construction issue remained unresolved when the Parties agreed to settle.  That issue, along with other merits issues and the yet to be filed and decided motion for class certification, would have been litigated aggressively. *Id.* If Visions FCU was successful in opposing class certification or at trial, that would have prevented recovering anything at all. *Id.* ¶ 47.

#### b.    Risks of Litigation

---

[11] *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for onethird of the Fund is reasonable and consistent with the norms of class litigation in this circuit"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting "request for 33% of the Settlement Fund is typical"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (same); *Klein v. PDG Remediation, Inc.*, No. 95-cv-4954- DAB, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) (same). The one-third award is also common in the Second Circuit in much larger cases as well. See, e.g., *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.33% of $586 million).

The Second Circuit has historically labeled the risk of success as ''perhaps the foremost factor to be considered in determining whether to award an enhancement." *Goldberger*, 209 F.3d at 54). Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is no sure thing. *Wal-Mart Stores, Inc.*, 396 F.3d at 118.

Plaintiff's Counsel took on considerable risk in filing and prosecuting this case. Nevertheless, Class Counsel proceeded with the litigation. Still, the risk remains that without settlement the trier of fact would determine that Visions FCU was permitted to assess the challenged bank fees. *Id.,* at ¶ 48. Thus, Class Counsel certainly invested extensive time and costs with no guarantee of success.

c.  Quality of Representation

Class Counsel are experienced in class action litigation, serving as Lead or Co-Lead Counsel in dozens of consumer class actions in federal and state courts throughout the country. Kaliel Decl. ¶ 49. Counsel used their experience to obtain a great result for the Settlement Class. "[T]he quality of representation is best measured by results, and such results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Goldberger*, 209 F.3d at 55 (citation omitted). Here the Settlement Fund, representing a 55 recovery of the most probable damages, is an excellent result—and that does not even include the additional $1.5 million in waived Uncollected Fees still owing by Settlement Class Members. Thus, the Court should easily find counsel achieved success. Kaliel Decl. ¶ 50.

d.  Requested Fee in Relation to the Settlement

The $589,999 requested fee – which is, again, 33.33% of the Settlement Fund—is reasonable in light of the work performed, the results obtained, and falls within the range of common fund awards in the Second Circuit. In considering the results, courts examine the value

of both monetary and injunctive relief. *See Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, at *25 (N.D.N.Y. Feb. 25, 2021) (holding that the overall value of the settlement, from which attorneys' fees are calculated, comprises monetary as well as non-monetary relief.); *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *7 (N.D.N.Y. Aug. 13, 2020) (awarding class counsels a 33% of the Settlement Fund). The results achieved here, including recovery of 55 of the disputed amounts plus other relief demonstrates the excellent results achieved through the Settlement.

The fee request here is consistent with this Court's order granting a 33% fee in *Kelly v. Community Bank, supra*, a case in which Plaintiff recovered approximately 39% of damages, compared with the 55% of damages achieved here.

As discussed above, courts in this circuit (including this Court) have found an award of 33.33% of a class settlement as the benchmark to be fair, reasonable, and within the range of what is normally awarded for a class settlement. *See Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *46 (compiling cases awarding 33% for settlements between $6,750,000 and $21,000,000, and noting reasonable paying clients typically pay one-third pursuant to contingent fee agreements). *See also Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."). Here, the requested fee, 33.33% of the Value of the Settlement, is clearly within the range of acceptable attorneys' fees in Second Circuit cases and is common in overdraft fee litigation. Courts regularly award fees in excess of 30% when awarding attorneys' fees in similar financial services class action settlements. The following depicts these settlements nationwide, all of which resulted in fee awards at or above the 33.33% that Class Counsel requests here:

| Bank Fee Case Name | Percentage of the Fund Awarded |
|---|---|
| | |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Farrell v. Bank of Am., N.A.,* 327 F.R.D. 422 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.,* 827 F. App'x 628 (9th Cir. 2020) | **40%** of 37.5 million common fund |
| *Wolfgeher v. Commerce Bank, N.A.,* No. 1:09-MD-02036-JLK (S.D. Fla.) (Dkt. 3574), | **38%** of $18.3 million common fund |
| *Nelson v. Rabobank, N.A.,* No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *In re Checking Account Overdraft Litig.,* No. 1:09-MD-02036-JLK, 2020 U.S. Dist. LEXIS 142012 (S.D. Fla. Aug. 10, 2020) | **35%** of $7.5 million |
| *Molina v. Intrust Bank, N.A.,* No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth,* No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.,* No. 10-C-1089 (Cir. Ct. W.Va.) | **33.33%** of $3 million |
| *Schulte v. Fifth Third Bank,* No. 09-cv-6655 (N.D. Ill.) | **33.33%** of $9.5 million |
| *Johnson v. Visions FCU, N.A.,* No. 12-cv-01405-RDM (M.D. Pa.) | **33.33%** of $2.5 million |
| *Bodnar v. Bank of America,* No. 5:14-cv-03224-EGS (E.D. Pa.) | **33.33%** of $27 million |
| *Holt v. Community America Credit Union, No.* 4:19-CV-00629-FJG (W.D. Mo.) | **33.33%** of 3.078 million |
| *White v. Members 1st Federal Credit Union,* Case No. 1:19-cv-00556-JEJ (W.D. Pa.) | **33.33%** of $910,000 |
| *Figueroa v. Capital One,* Case No. 3:18-cv-00692-JM-BGS (S.D. Cal.) | **33.33%** of $13 million |
| *Liggio v. Apple Federal Credit Union, No.* 1:18-cv-01059-LO-MSN (E.D. Va.) | **33.33%** of $2.7 million |
| *Lambert v. Navy Fed. Credit Union,* No. 1:19-cv-103-LO-MSN, 2019 U.S. Dist. LEXIS 138592, at *3 (E.D. Va.) | **33.33%** of $16 million |

As the requested fee is clearly in line with other similar overdraft litigation around the nation that settled for a similar amount, the fee requested is reasonable.

      e.  <u>Public Policy Considerations</u>

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id. See also Wal-Mart Stores*, 396 F.3d 96 (policy issue in evaluating a fee request is that fees "must . . . serve as an inducement for lawyers to make similar efforts in the future"). Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger,* 209 F.3d at 51. This and the other *Goldberger* factors support approval of the attorneys' fees requested by Class Counsel.

      f.  <u>The Time and Labor Expended by Counsel and Lodestar Cross-Check</u>

"The last Goldberger factor to consider is the time and labor expended by counsel, which is essentially what the lodestar method does by assessing the value of attorney hours worked times a reasonable billing rate." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353. Under the lodestar method, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate" to calculate the "lodestar." *Goldberger*, 209 F.3d at 47. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. In considering the lodestar in common fund settlements, it is appropriate to enhance the lodestar by a multiplier accounting for "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as

of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Goodwin v. Boesky (In re Ivan F. Boesky Sec. Litig.)*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995).

There was no unnecessary amount of time, labor, and resources expended by the Parties. *Id.* As is detailed above, this Action was contested and litigated efficiently and intelligently, including hotly contested discovery, complaint amendment, two mediations, negotiating and documenting the Settlement, and the Settlement approval process. Kaliel Decl. ¶ 51.

To date, Class Counsel have expended a total of 561.5 hours in the prosecution of this case, including anticipated time preparing for the Final Approval Hearing, filing of supplemental declarations, responding to objections, if any, and preparing for and attending the Final Approval Hearing. Kaliel Decl., ¶ 53. Further, there will be significant post-Final Approval work ensuring that the Settlement proceeds are properly distributed to Settlement Class Members, responding to Settlement Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed. *Id.* ¶ 54.

Summaries of the time expended by all counsel and paralegals on the Action appear in Class Counsel's Kaliel Declaration in support of this Motion, organized by work performed in the various stages of the Action. Hourly rates of attorneys and paralegals are commensurate with the rates charged by class action practitioners in this state with similar experience. *Id.* ¶ 55. *See, e.g.*, *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12cv275 (DLC), 2015 U.S. Dist. LEXIS 49477, at *5 (S.D.N.Y. Apr. 15, 2015) (approving as reasonable in this district $836/hour for a litigation partner; $631.75/hour for an eighth-year associate; and $541.50/hour for a fourth-year associate); *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015) (approving rates up to $950/hour and citing National Law Journal survey indicating that the average partner billing rate at the largest New York-based law

firms is $982 per hour); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at

*38 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73, 73 (2d Cir.

2015) (approving rates ranging from $640 to $875 for partners, $550 to $725 for of counsels, and

$335 to $665 for other attorneys).[12]

Finally, although not required to be performed by this Court, as Plaintiff is applying

pursuant to the percentage-of-benefit for attorneys' fees, a lodestar analysis also supports the

requested fee. The Court need not exhaustively scrutinize the hours documented. *Goldberger*, 209

F.3d at 50. Fees representing multiples of lodestar are regularly awarded in a case like this to reflect

the contingency-fee risk and other relevant factors. *See, e.g., In re Flag Telecom Holdings, Ltd.*

*Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'Under the lodestar method, a

positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the

complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and

other factors.'").

Here, the aggregate lodestar is $464,199.50. Class Counsel seek fees of $589,999. Class

Counsel seek a modest lodestar multiplier of 1.27, which is below the range of what courts in this

circuit typically award.  Kaliel Decl., ¶ 58. *Hanifin*, 2014 U.S. Dist. LEXIS 115710 at *19 ("Courts

regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even

higher multipliers."); *see also* Wal-Mart, 396 F.3d at 123 (upholding multiplier of 3.5); *NECA-*

*IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL

3369534, at *1 (S.D.N.Y. May 2, 2016) (3.9 multiplier on $272 million settlement); *Davis v. J.P.*

*Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (multiplier of 5.3 was "not

---

[12] Timesheets supporting the hours set forth in Class Counsel's Kaliel Declaration can also be brought to the hearing.

atypical" in similar cases); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at \*6 (S.D.N.Y. Aug. 18, 2017) (3.14 multiplier was "within the range of reasonable . . . multipliers approved in this Circuit"); C*ornwell v. Credit Suisse Grp.,* No. 08-cv-03758 (VM), 2011 WL 13263367, at \*2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *Johnson v. Brennan*, No. No. 10-cv- 4712, 2011 U.S. Dist. LEXIS 105775, at \*58 (S.D.N.Y. Sep. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

As detailed above, Class Counsel assumed significant risks in representing Plaintiff on a contingent fee basis. Those risks should be rewarded. Given that this Court applies the percentage of the fund method with a lodestar crosscheck, the 1.27 multiplier is reasonable. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353 (finding that a multiplier of five "was large, but not unreasonable"); *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, at \*8 (S.D.N.Y. Apr. 30, 2019) (approving "a fee award equivalent to 30% of the settlement fund [that] represents a lodestar multiplier of approximately 3.53."). Class Counsel expended resources to achieve a prompt fair, adequate and reasonable settlement.

For the reasons set forth above, the requested fee is appropriate, fair, and reasonable, and should therefore be approved.

## G.    Application for Service Award

As noted above, a \$5,000.00 Service Award is sought for the Plaintiff as Class Representative. "Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the

plaintiffs.'" *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, at *28-29 (N.D.N.Y. Feb. 25, 2021). Plaintiff invested significant time in this case and risked her reputation in doing so, by publicly disclosing her personal financial difficulties, creating notoriety regardless of her success on the claims.  Had she failed, they created risk to her reputation. She should be commended for taking action to protect the interests of thousands of Visions FCU accountholders who were affected by Visions FCU's practices, on top of their individual claims. It is undisputed that the Plaintiff's efforts have created extraordinary financial benefits for the Settlement Class, compensating them for past harm and protecting them from future harm. Their efforts will also inure to the benefit of new accountholders, who will better be able to understand how Visions FCU assesses fees. Plaintiff expended hours in advancing this litigation against a large and powerful adversary. She conferred with Class Counsel on a number of occasions. Kaliel Decl. ¶ 59.  Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; (3) providing discovery documents; and (4) participating in conferences with Class Counsel.  *Id.*, ¶ 60.

The award sought is well within the range awarded in this District and should be awarded here.

### H.    Reimbursement of Costs

 "It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *67 (citation omitted).  Second Circuit courts grant such requests as a matter of course.  *Id.*  Class Counsel requests reimbursement of $12,868.50 for actual costs advanced and necessarily incurred in connection with the prosecution and settlement of the Action. Kaliel Decl.

¶ 61. Specifically, those costs and expenses consist of filing fees and service of process costs, pro hac vice admission fees, expert witness fees, litigation support vendors and, most substantially, the services of a well-qualified mediator. *Id*. Class Counsel is not seeking costs related to legal research, copying, and other overhead expenses, which were advanced and are commonly reimbursed. All of these out of these pockets were reasonably and necessarily incurred to pursue this Action. *Id*.

## III.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award a Class Representative Service Award in the amount of $5,000.00 ; (6) award attorneys' fees to Class Counsel in an amount of $589,999 which is 33.33% of the Settlement Fund; (7) award Class Counsel reimbursement of litigation costs and expenses in the amount of $12,868.50; and (8) enter final judgment dismissing this Action, and reserving jurisdiction over settlement implementation. For the Court's convenience, a proposed Final Approval Order is attached hereto as ***Exhibit D***.

DATED: February 6, 2023.                Respectfully submitted,

*/s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
**KalielGold PLLC**
1100 15th Street, NW, 4th Floor
Washington, D.C.  20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

Sophia Goren Gold (Bar Roll No. 701241)
**KalielGold PLLC**

950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

Taras Kick (admitted *pro hac vice*)
**The Kick Law Firm, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Taras@kicklawfirm.com

Kevin P. Roddy
**Wilentz Goldman & Spitzer PA**
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Tel: (732) 636-8000
kroddy@wilentz.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 6, 2023, the foregoing was filed via CM/ECF, which caused a true and correct copy to be served to all counsel of record.

*/s/ Jeffrey D. Kaliel*            
Jeffrey D. Kaliel (Bar Roll No. 518372)
