## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHELLE PETREY, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:20-CV-1147-MAD-ML |
| VISIONS FEDERAL CREDIT UNION, | ) ) | District Judge Mae A. D'Agostino |
| Defendant. | ) ) | |

### FINAL APPROVAL ORDER APPROVING
### CLASS ACTION SETTLEMENT AND GRANTING APPLICATION
### FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS

### I.    INTRODUCTION

As set forth below, the Court hereby grants Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs and Service Awards.

### II.    NOTICE WAS EFFECTUATED

#### A.  CAFA Notice

On July 15, 2022, the Settlement Administrator sent notice packets to federal authorities as required by the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1715(d).

#### B.  Notice to Class Members

Prior to distributing notice to the Class members, the Settlement Administrator established a website, bankfeeclassaction.com, as well as a toll-free line that Class Members could access or call for any questions or additional information about the proposed Settlement. Declaration of Settlement Administrator Regarding Notice and Settlement Administration filed contemporaneously herewith ("Admin Decl.") at ¶¶ 20, 22.

Once Class Members were identified via Visions FCU's business records, the notices attached to the Settlement Agreement were delivered to each Settlement Class Member. For current Visions FCU accountholders who have elected to receive bank communications via email, notice was delivered

1

via email. Admin Decl., ¶ 7.  To former Visions FCU accountholders, and to all current accountholders who have not elected to receive communications by email or for whom Visions FCU does not have a valid email address, notice was delivered by U.S. Mail postcard. *Id.* ¶ 11.

On January 5, 2023, the Settlement Administrator mailed the Court-approved notice of the Settlement to the 2,072 Settlement Class Members who elected to receive notice from Visions FCU by mail, at their last known mailing addresses after updating through the National Change of Address database. *Id.* ¶ 15. For returned notices, the Settlement Administrator performed skip trace searches to attempt to locate an updated address and remail the notice. *Id.* ¶ 17.  In total, mailed Notice was delivered, without return, to 36,236 unique Class members. *Id.* ¶ 18.

Next, on January 5, 2023, the Settlement Administrator emailed the Court-approved notice of the Settlement to 34,164 Class Members who have opted to receive communications from Visions electronically. *Id.* ¶ 10.  This group also includes those Settlement Class Members who elected to receive notices by mail, but whose mailing address was not accurate. In total, emailed Notice was delivered, without return, to 36,236 unique Settlement Class Members. *Id.* ¶ 19.

In response to the notice, to date no Settlement Class Member objected to the Settlement. Admin. Decl., ¶ 24. No Settlement Class Members have so far elected to opt-out of the Settlement. *Id.*, ¶ 23.

The Settlement Administrator also established and maintains an automated toll-free telephone line to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. Admin. Decl. ¶ 22. As of January 31, 2023, a total of 54 calls have been made to the toll-free hotline for a total of 113 minutes. Admin. Decl. ¶ 23. Additionally, 175 unique visitors accessed the Settlement Website, viewing 285 pages. Admin. Decl. ¶ 21.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### 1.    The Settlement Class.

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "all current and former members of Defendant with consumer accounts, who were charged a Relevant Fee during the Class Period. Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members." Agreement at ¶ 49. Relevant Fees include both APPSN Fees and Retry NSF Fees. *Id.* at ¶ 43. The Class Period is from September 21, 2014 to April 30, 2022. *Id.* at ¶ 19.

### 2.    Relief for the Benefit of the Settlement Class.

#### a.    Settlement Fund

The Settlement Fund is $1.77 million and will be used to: (a) pay Settlement Class Members their respective cash Settlement Class Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Class Representative; (d) Settlement Administration Costs; and (e) if funds remain after the initial distribution to Settlement Class Members to distribute to the *cy pres* recipient. Agreement at ¶ 72.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 90 days following the Effective Date of the Settlement, Visions FCU and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id* at ¶ 72(d).

#### b.    Allocation of the Settlement Class Member Payments

Of the $1,770,000 paid into the Settlement Fund, $1,171,740 (66.2%) is allocated to the APPSN Fee Class and $598,260 (33.8%) is allocated to the Retry NSF Fee Class. *Id* at ¶ 72(d). If applicable, Settlement Class Members may receive payments as members of the APPSN Fee Class and the Retry NSF Fee Class. *Id.* Based on this allocation, payments from the Net Settlement Fund to the Settlement Class Members shall be calculated as follows:

      i.                Settlement Class Members of the APPSN Fee Class shall be paid per incurred APPSN Fee calculated as follows: (0.662 of the Net Settlement Fund/Total APPSN Fees) x Total number of APPSN Fees charged to and paid by each APPSN Fee Class member; and

      ii.              Settlement Class Members of the Retry NSF Fee Class shall be paid per Retry NSF Fee calculated as follows: (0.338 of the Net Settlement Fund/Total Retry NSF Fees) x Total number of Retry NSF Fees charged to and paid by each Retry NSF Fee Class member.

*Id* at ¶ 72 (d)(i-ii).

### c.     Distribution of Settlement Class Member Payments

Settlement Class Members who are Current Account Holders when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to any account they are maintaining individually at the time of the credit. *Id.* at ¶ 72(d)(iii). If by the deadline to apply credits of Settlement Class Member Payments to accounts Visions FCU is unable to complete certain credit(s), Visions FCU shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Account Holders to receive payment. *Id.*

For Settlement Class Members who are Past Account Holders when the Net Settlement Fund is distributed or at that time do not have an individual account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* For jointly held accounts, checks will be payable to all customers and mailed to the first customer listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account,

and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* The Settlement Class Member shall have one-hundred eighty (180) days to negotiate the check. The total value of checks uncashed after 180 days shall be distributed to a Court-approved *cy pres* recipient. *Id.*

### d.    Disposition of Residual Funds

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall be distributed to an appropriate *cy pres* recipient agreed to by the Parties and approved by the Court. *Id.* at ¶ 73. In no event shall any portion of the Settlement Fund revert to Visions FCU. *Id.* at ¶ 72 (iv).

### 3.    Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Visions FCU from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

### 4.    Settlement Administration

The Settlement Administrator is one of the leading class action settlement administrators in the United States. Its Settlement Administration responsibilities are delineated in the Agreement. *Id.* at ¶ 64.

### 5.    Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement at ¶ 80-83. Visions FCU also may terminate the Settlement if 5% or more of the total Settlement Class members opt-out. *Id.*, at ¶ 80.

## IV.    DISCUSSION

### A.    Class Certification

#### 1.    *Rule 23*

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding findings of predominance under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class"). "But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

On December 6, 2022, the Court preliminarily certified the Settlement Class. *See* Doc. No. 95. Plaintiff now request that the Court certify the APPSN Fee Class and the Account Verification Fee Class for purposes of effectuating the settlement.

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to grant certification." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 U.S. Dist. LEXIS 34909, at *13 (N.D.N.Y. Feb. 25, 2021) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

6

### 2. Numerosity

With thousands of Settlement Class Members, is apparent that the proposed class satisfies the numerosity requirement. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 3. Commonality

The proposed Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). Courts construe the commonality requirement liberally. *See id.*

Here, the case involves numerous common issues. Plaintiff and Settlement Class members all bring identical claims, i.e., that Defendant improperly charged Relevant Fees in violation of the Account agreements. Courts have found such allegations sufficient to satisfy the commonality requirement. *See Story*, 2021 U.S. Dist. LEXIS 34909 at *14 (citing *Pantelyat v. Bank of America, N.A.*, No. 16-CV-8964, 2019 WL 402854, *2 (S.D.N.Y. Jan. 31, 2019)).

### 4. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story*, 2021 U.S. Dist. LEXIS 34909 at *14-15 (quoting *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)). The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal

theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Settlement Class members' claims. Plaintiff and the Settlement Class members entered into the same types of Account agreements and were allegedly assessed the same Relevant Fees in violation of those contracts. Additionally, the claimed injuries arise from the same course of conduct for both the Settlement Class members and Plaintiff. As such, Plaintiff have satisfied the typicality requirement. *See Morris*, 859 F. Supp. 2d at 616; Frank, 228 F.R.D. at 182.

### 5. *Adequacy of the Named Plaintiff and Class Counsel*

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'" *Story*, 2021 U.S. Dist. LEXIS 34909 at *15-16 (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

In the present matter, there is no evidence that the interests of Plaintiff and the Settlement Class members are at odds. Rather, the record reflects that Plaintiff and the Settlement Class members have the same incentive to maximize their compensation for past harm.

Additionally, Class Counsel in this Action have established that they are qualified, experienced, and able to conduct the litigation of this Action. Class Counsel is experienced in handling class actions, complex litigation, and claims stemming from assessment of banks fees by financial institutions. As

such, the Court finds that Class Counsel also meets the Rule 23(a)(4) requirements for adequate representation.

### 6.   Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, again, Plaintiff have satisfied the requirements of Rule 23(b)(3). As discussed, common questions of law and fact predominate over any questions that might affect the individual Plaintiff. Further, a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class member is otherwise entitled. Additionally, litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class members, particularly those who lack the resources to bring their claims individually. Accordingly, the Court grants Plaintiff' motion insofar as it seeks class certification for settlement purposes.

### B.    Fairness of the Proposed Settlement

#### 1.   Standard of Review

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also Story*, 2021 U.S. Dist. LEXIS 34909 at *18. Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate" after considering the following:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Second Circuit also analyze proposed class-action settlements under the framework set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), in tandem with Rule 23 to determine whether a class settlement is substantively fair and warrants final approval. *See Story*, 2021 U.S. Dist. LEXIS 34909 at *18 (citing *Grinnell*, 495 F.2d at 463). The Grinnell factors include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

### 2. The Settlement is Procedurally Fair

Rules 23(e)(2)(A)-(B) "constitute the procedural analysis" of the fairness inquiry. *Story*, 2021 U.S. Dist. LEXIS 34909 at *18. "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Story*, 2021 U.S. Dist. LEXIS 34909 at *19 (quoting *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192, 2019 U.S. Dist. LEXIS 218116, *6 (S.D.N.Y. Dec. 18, 2019)). This presumption of fairness and adequacy applies here.

Based on the submissions before the Court and as discussed at the Final Approval Hearing, the Settlement was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff' claims. Plaintiff' counsel conducted a thorough investigation, engaged in formal discovery which involved Defendant producing documents and transactional data, and engaged a data expert to determine whether a class could be ascertained and to support Plaintiff's future motion for class certification. Class Counsel also participated in extensive settlement negotiations with Defendant. The final terms of the Settlement were memorialized in a comprehensive Agreement. These arm's-length negotiations raise a presumption that the Settlement meets the requirements of due process. *See Story*, 2021 U.S. Dist. LEXIS 34909 at *20. Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3. The Settlement is Substantively Fair

#### a. The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy. This case, had it not settled, would have been all three. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems

associated with them." *Story*, 2021 U.S. Dist. LEXIS 34909 at *20 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This case is no exception. Additionally, settlement of this matter avoided the delay that necessarily would have followed motion practice and the time needed for the Court to act on those motions. After all that, a lengthy and complex trial would be required, that would consume tremendous time and resources for all Parties and the Court. Therefore, the first *Grinnell* factor weighs heavily in favor of Final Approval.

### b. The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Story*, 2021 U.S. Dist. LEXIS 34909 at *21 (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *Id.* There is only one Settlement Class members that opted-out of the Settlement and there have been no objections. As such, this factor favors Final Approval. *See id.* (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus [] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Story*, 2021 U.S. Dist. LEXIS 34909 at *21-22 (quoting *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2015 U.S. Dist. LEXIS 121574 *7 (S.D.N.Y. Sept. 9, 2015)). The Parties' discovery meets this standard. They exchanged discovery as well as a separate production of transactional data, which as discussed above, was analyzed by the Parties' experts. Therefore, this factor favors Final Approval.

### d. Risk of Establishing Liability and Damages and Maintaining Class Action

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the Settlement. In assessing the fourth, fifth, and sixth factors, which are often considered together, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to 'foresee with absolute certainty the outcome of the case.'" *Story*, 2021 U.S. Dist. LEXIS 34909 at *22 (quoting *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *8). "'[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id.* (quoting *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "In assessing the risks, courts recognize that 'the complexity of Plaintiff's claims ipso facto creates uncertainty.'" *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009)).

Here, while Plaintiff and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal. A trial on the merits would involve risks for Plaintiff as to both liability and damages. Plaintiff would have to prove that they and the Settlement Class were charged Relevant Fees and that the assessment of those fees was in violation of their Account agreements. Plaintiff would risk a trier of fact reaching the conclusion that the language of the agreement, and other related disclosure documents, permits Defendant to assess Relevant Fees in the manner that it did.

Additionally, there is risk and additional expense associated with obtaining class certification and maintaining both conditional and class certification through trial. The Court has not certified a Rule 23 class, and such a determination would only be reached after further discovery and exhaustive briefing by the Parties. Even assuming that the Court granted certification, there is always the risk of decertification after the close of discovery. *See Story*, 2021 U.S. Dist. LEXIS 34909 at *23-24; *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting the defendant's motion to

decertify collective action). Risk, expense, and delay permeate such processes. As such, the Court finds that the fourth, fifth, and sixth Grinnell factors weigh in favor of granting Final Approval.

### e. Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment. Even assuming that it could withstand a greater judgment, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted). Indeed, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Story*, 2021 U.S. Dist. LEXIS 34909 at *24 (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006)). Here, this factor is, at best, neutral, and "does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86 (citations omitted).

### f. Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also strongly support approval of the settlement. *Grinnell*, 495 F.2d at 463. Courts typically analyze the final two *Grinnell* factors together. *See Global Crossing*, 225 F.R.D. at 460. In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'" *Story*, 2021 U.S. Dist. LEXIS 34909 at *25 (quoting *Frank*, 228 F.R.D. at 186). Rather, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119. Moreover, the settlement amount must be judged "not in comparison with the possible

recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Story*, 2021 U.S. Dist. LEXIS 34909 at *25 (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)). The overall Value of the Settlement comprises monetary as well as non-monetary relief. *See id.*; *Velez v. Novartis Pharm. Corp.*, No. 04- CV-09194, 2010 WL 4877852, *18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be considered in calculating value of a settlement).

In the present matter, the total Settlement Fund is $1,770,000 and represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiff attained class certification, overcame a motion to decertify any class, succeeded on all claims at trial, and survived an appeal with their judgment intact.

By Class Counsel's estimation, the Settlement Fund represents approximately 55% of Defendant's potential damages exposure, assuming Plaintiff were to prevail on all of their claims. The Settlement represents a substantial recovery for Settlement Class Members, particularly in light of the risks of litigation.

Further, the Class Members will receive a pro rata payment based a percentage of the Net Settlement Fund multiplied by the total amount of Relevant Fees assessed. Settlement Class Member Payment amounts and forgiveness of Uncollected Overdraft Fees will depend on the class or classes to which they belong. Weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the recovery is fair and reasonable.

### g.  *Rule 23(e)(2)(C)-(D)*

Rule 23 also requires the Court to consider whether the relief provided for the Settlement Class is adequate and whether the proposed Settlement treats Settlement Class Members equitably relative to each other. As discussed above, the record demonstrates that the Settlement provides adequate relief to Settlement Class Members by avoiding the cost and risk of further litigation and the

Parties have proposed an effective method for processing and allocating Settlement Class Members' claims. The Agreement calls for automatic payments to Settlement Class Members and automatic forgiveness of Uncollected Fees.

The Agreement's allocation plan calls for Settlement Class Members to receive a pro rata share of the Net Settlement Fund based upon the amount of Relevant Fees they incurred. It also provides for forgiveness of Uncollected Overdraft Fees to those eligible for such relief. The Court finds that this allocation is reasonable and treats all Settlement Class Members in an equitable manner. *See Story*, 2021 U.S. Dist. LEXIS 34909 at \*27; *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, \*7 (E.D.N.Y. Oct. 23, 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel") (quotation omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, \*15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund).

Finally, as will be discussed in more detail below, Plaintiff' proposed award of attorneys' fees is reasonable and the Parties filed the Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the Settlement, on the docket. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

**C.    Service Award**

The named Plaintiff seeks a Service Awards of $5,000.00 for serving as Class Representative. Class Counsel argue that these Service Awards are appropriate and reasonable in light of the substantial and meaningful work that Plaintiff have contributed.

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Story*, 2021

16

U.S. Dist. LEXIS 34909 at *28-29 (quoting H*all v. ProSource Technologies, LLC*, No. 14-CV-2502, 2016

U.S. Dist. LEXIS 53791, *9 (E.D.N.Y. Apr. 11, 2016). A Service Award of $5,000.00 for each Class

Representative is reasonable and within the range of awards granted in this Circuit. *See id.* (awarding

the named plaintiffs service awards of $15,000)). Therefore, the Court approves a $5,000.00 Service

Award for the Class Representative.

**D.    Costs**

Class Counsel request reimbursement of **$13,818.50** in costs to be paid from the Settlement

Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and

customarily charged to their clients, as long as they were 'incidental and necessary to the

representation' of those clients." *Story*, 2021 U.S. Dist. LEXIS 34909 at *29 (quoting *In re Indep. Energy

Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)). Here, the Notice informed

Settlement Class members that Class Counsel would seek reimbursement of expenses. The vast

majority of the costs are attributable to expert and mediation expenses and were necessary.

Accordingly, the Court awards costs in the amount of $13,818.50.

**E.    Settlement Administrator Costs**

Class Counsel also seeks payment to Epiq Class Action and Claims Solutions, Inc, which was

selected to serve as the Settlement Administrator, to be paid out of the Settlement Fund. Notice of

this selection and payment was provided to the Settlement Class and no objections were made. The

Court finds that this expense is in line with cases of a similar nature. Accordingly, the Court grants

Class Counsel's request.

**F.    Attorney's Fees**

Class Counsel move for an award of attorneys' fees in the amount of $589,999, which

constitutes 33.33% of the cash Settlement Fund.

*i.    Method of Calculating Attorneys' Fees*

17

"Attorneys who create a common fund from which members of a class are compensated are entitled to 'a reasonable fee — set by the court — to be taken from the fund.'" *Story*, 2021 U.S. Dist. LEXIS 34909 at *32 (quoting *Goldberger*, 209 F.3d at 47). Such a fee award directly depletes the amount by which the class benefits. Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court. *See, e.g., Burger v. CPC Intern., Inc.*, 76 F.R.D. 183, 188 (S.D.N.Y. 1977).

The Second Circuit has sanctioned two methods — the percentage method and lodestar method — for calculating reasonable attorneys' fees in class actions. *See Goldberger*, 209 F.3d at 50. The Court has discretion to award fees based on either the percentage method or the lodestar method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this Action. *See Story*, 2021 U.S. Dist. LEXIS 34909 at *32 (citing *McDaniel*, 595 F.3d at 417); *WalMart*, 396 F.3d at 121. The "percentage method," is the far simpler method by which the fee award is "some percentage of the fund created for the benefit of the class." *Savoie*, 166 F.3d at 460 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)). In determining what percentage of the fee to award, courts consider the same factors used to gauge the appropriate multiplier for the lodestar. *See Goldberger*, 209 F.3d at 47. When utilizing the percentage method, courts often "crosscheck" the adequacy of the resulting fee by applying the lodestar method. *See Goldberger*, 209 F.3d at 50. Under use of either method, the touchstone of the inquiry is whether the award is reasonable. *See id.* A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *See id.*

### a.  Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the Court must first determine a baseline

18

reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance. *Story*, 2021 U.S. Dist. LEXIS 34909 at \*32. Additionally, a sliding scale approach – awarding a smaller percentage of the settlement as the amount of the settlement fund increases – is appropriate in order to avoid overcompensating the plaintiffs' counsel to the detriment of the class members they represent. *See id.* (citing *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014)) (other citation omitted). Class Counsel contend that a fee of 33.33% of the Value of the Settlement to be payable from the Settlement Fund is reasonable and commonly awarded in cases of this nature. The Court finds that it is a reasonable baseline in the present matter. *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at \*7 (N.D.N.Y. Aug. 13, 2020) (awarding class counsels a 33% of the Settlement Fund); *see also Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 U.S. Dist. LEXIS 171443, at \*18-19 (N.D.N.Y. Dec. 4, 2012) (citing *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 179 (E.D.N.Y. 2012)(awarding attorneys' fees of one-third of the settlement); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at \*3 (S.D.N.Y. Aug. 23, 2010) (awarding 33% of the settlement fund).

### b. Counsel's Time and Labor

Class Counsel spent significant effort to achieve the settlement. During the formal litigation of this Action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel engaged in discovery. Finally, Class Counsel took part in mediation, and negotiated the terms of a favorable settlement for Plaintiff.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving overdraft fees across the country.

Upon completion of the Agreement, Plaintiff drafted and filed their motion for Preliminary Approval. After Preliminary Approval was granted, Class Counsel worked and communicated with the Settlement Administrator to ensure that the Notice Program was carried out efficiently and correctly. Further, Class Counsel spent hours preparing the Motion for Final Approval, which included the filing of additional declarations, and preparing for and attending the Final Approval Hearing. Further, there will be significant post-Final Approval work ensuring that the Settlement benefits are properly distributed to Settlement Class Members, responding to Settlement Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed.

In performing these and other tasks, Class Counsel asserts that their total hours of attorney, paralegal, and staff member time is 561.5, including an estimate of future hours they will spend assisting the Settlement Administrator following Final Approval, which they claim represents an aggregate lodestar of approximately $464,199.50. Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c. *Complexity of the Case*

The magnitude and complexity of this case also supports the requested award. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other problems associated with them." *Story*, 2021 U.S. Dist. LEXIS 34909 at *34 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174). This case is no exception. Plaintiff' claims involved complicated banking activities and the analysis of voluminous data to determine which Account Holders are members of the Settlement Class.

### d. *Risk of Litigation*

Class Counsel undertook risk in accepting the case on a contingency basis. *Story*, 2021 U.S. Dist. LEXIS 34909 at *34. In the face of the risk of no recovery, Class Counsel proceeded with the

20

litigation and obtained a favorable outcome for the class. Thus, Class Counsel certainly invested extensive time and costs with no guarantee of success.

### e. Quality of the Representation

Class Counsel competently and efficiently represented Plaintiff in prosecuting this Action. As such, this factor supports the requested award.

### f. Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014). Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *Story*, 2021 U.S. Dist. LEXIS 34909 at *34.

Class Counsel obtained a favorable settlement in an efficient manner. Ultimately, Class Counsel's fee award is tied directly to the Value of the Settlement they created, with no claims process to obtain the benefits of the Settlement. No money will revert to the Defendant.

### g. Lodestar Cross-Check

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a cross-check to the fees awarded under the percentage of the fund method. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013). The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47 (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). The resulting lodestar may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation. *See id.*

When the lodestar method is used as a cross-check, "the Court need not exhaustively scrutinize

the hours documented by class counsel; instead, the reasonableness of the lodestar 'can be tested by the court's familiarity with the case.'" *Story*, 2021 U.S. Dist. LEXIS 34909 at *35. (quoting *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548, 2012 WL 1320124, *13 (S.D.N.Y. Apr. 16, 2012)). "Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.*

Here, Class Counsel asserts that its combined lodestar is $464,199.50, resulting in a multiplier of about 1.27. This multiplier is within the range of accepted multipliers for this Circuit. *See Hanifin v. Accurate Inventory & Calculating Serv.*, 2014 U.S. Dist. LEXIS 115710, at *19 (N.D.N.Y. Aug. 20, 2014) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *see also Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-CV-10783, 2016 WL 3369534, *1 (S.D.N.Y. May 2, 2016) (approving a multiplier of 3.9 on a $272 million settlement); *Woburn Ret. Sys. v. Salix Pharm.*, Ltd., No. 14-CV-8925, 2017 WL 3579892, *6 (S.D.N.Y. Aug. 18, 2017) (finding that a 3.14 multiplier was "within the range of reasonable … multipliers approved in this Circuit"). Accordingly, the Court finds that Class Counsel is entitled to $589,999 in reasonable attorneys' fees.

## G.    *Cy Pres* Distribution

Pursuant to the Agreement, no money shall revert to Defendant. Instead, within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall be to the *cy pres* beneficiary that the Parties shall suggest, and the Court approves.

## V.    CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiff' unopposed motion for certification of the Settlement Class, Final Approval of the class action settlement, approval of Service Awards, and approval of attorneys' fees and costs is GRANTED; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**DATED:** _____March 30_____, 2023
　　　　　　　Albany, New York

Honorable Mae A. D'Agostino
UNITED STATES DISTRICT JUDGE